## GEORGE *v.* TATE.

1. Where the signature of a firm name to an instrument shows that it was intended to be the act of all the partners, effect must be given to it accordingly, although only one of them is named in the body of the instrument.

2. When, in an action at law upon his bond, the defendant sets up that it was procured from him by fraud, no evidence in support of the plea is admissible, except that which relates to the execution of the instrument.

3. A demand against the obligee, obtained by the defendant after notice of the assignment of the bond to the plaintiff, is not a matter of set-off.

4. The assignment of a judgment, and of all bonds and instruments which, during the progress of the suit wherein it was rendered, were taken in connection therewith, transfers to the assignee a bond given by the defendant, with surety, whereby he secured the release of his property which had been seized under an attachment issued in the suit.

ERROR to the Circuit Court of the United States for the District of Kansas.

This was an action by Samuel W. Tate upon a bond bearing date Sept. 19, 1872, executed to John J. Myers and William Green by the firm of M. B. George & Brothers as principal, and J. W. L. Slavens as surety. The bond was subject to the condition, —

" That whereas the said Myers & Green have heretofore commenced, and now have pending, a civil action in the District Court of Ellsworth County, State of Kansas, against said M. B. George & Brothers, to recover the sum of $8,509.50, and have also filed their affidavit according to law, for a writ or writs of attachment to issue for the property of said M. B. George & Brothers; and whereas writs of attachment have issued and are now in the hands of the sheriffs of those counties to which said writs of attachment have been directed; and whereas the said M. B. George & Brothers have property within the jurisdiction of said court, about to be attached under and by virtue of said writs of attachment; and whereas said Myers & Green have agreed and promised the said M. B. George & Brothers that they, Myers & Green, will recall the said writs of attachment upon their, M. B. George & Brothers, executing a bond with approved security to pay the amount of the judgment and costs which may be rendered in the said action against said M. B. George & Brothers.

"Now, therefore, if we, the foregoing named bounden parties, shall well and truly pay to Myers & Green the amount of the judgment and costs which may be rendered in the foregoing named action by said District Court in sixty days from the rendition thereof, then the foregoing bond to be void, otherwise to be and remain in full force and effect."

The petition avers that Myers & Green performed the conditions in the bond mentioned, that being indebted to Tate they assigned and transferred to him the bond and their claim and demand against George & Brothers, and that on the rendition of a judgment against that firm for $9,758 they assigned in writing it and the bond to him, together with all their right, title, and interest therein and thereto, and that the bond and judgment remain unpaid. At the time of the execution of the bond the obligees were partners doing business under the firm name of Myers & Green.

The defendants' answer admits the execution of the bond, but denies the other allegations of the petition, and sets up as a defence that they were induced to sign the bond by the false and fraudulent representations made to them by Green, and of the attorney of Myers & Green, that six hundred and seventy-five head of cattle, sold but not delivered to the purchasers by M. B. George & Brothers, had been attached in a suit against the latter by Myers & Green, and were then held by virtue of such attachment.

Slavens sets up as a further defence by way of set-off, that Myers & Green were indebted to the firm of Ferguson, Slavens, & Co., of which he was a member, in a sum larger than the judgment obtained by Myers & Green against M. B. George & Brothers, and that on the last of July, 1874, before he had any notice of the assignment to Tate, by Myers & Green, of the bond in suit, said firm of Ferguson, Slavens, & Co., for value, assigned to him, Slavens, their claim against Myers & Green; that he was still the owner thereof; that it was due and unpaid; and that Myers & Green were insolvent.

To these defences the plaintiff filed a general denial.

The assignments in the petition mentioned are as follows: —

"Myers & Green
　　　vs.
M. B. George & Bros. }

"I, William Green, in consideration of $8,509.00 (eight thousand five hundred and nine dollars), to me paid by Samuel W. Tate, of Llano County, Texas, do hereby assign to the said S. W. Tate the within written instrument, and all my interest in the covenants and agreements therein contained. That I hereby assign, turn over, and convey to and for the benefit of S. W. Tate, of the county of Llano, State of Texas, all my right and interest in a certain suit now pending in the District Court of Ellsworth County, Kansas, wherein I, William Green, and J. J. Myers are plaintiffs, and M. B. George & Brothers are defendants.

"And I constitute the said S. W. Tate my attorney irrevocable, with full power at his own charge in my name to take all legal measures which may be necessary or proper for the recovery or enjoyment of the assigned premises, with power of substitution.

"Witness my hand and seal this first day of November, A.D. 1872.

"Myers & Green,
By Wm. Green.

"Executed in the presence of—
"G. A. Mills.

"John J. Myers and William Green, Co-
　　partners as Myers & Green, Plaintiffs,
　　　　　　　　　vs.
Moses B. George, William L. George,
　　James B. George, and John E. George,
　　Copartners as M. B. George & Brothers,
　　Defendants. }

"1874, May 14. Judgment against the said defendants, M. B. George & Brothers, in favor of said Myers & Green. Debt, $9,758.00; costs, $

"Whereas said Myers & Green, since the commencement of the above suit and before the said judgment, sold their demand against the defendants to Samuel W. Tate for a debt owned by Myers & Green to Tate, and said suit has been carried on in the name of Myers & Green to judgment, and the said judgment and the bonds and instruments connected therewith and taken in said suit by the plaintiffs from the defendants and their sureties belong to said Tate: Therefore we, the said Myers & Green, hereby, for value

received by us from said Tate, do sell, transfer, set over, and assign to the said Samuel W. Tate the said judgment, and all bonds and instruments taken therein and connected therewith during the progress of said suit, and all our right and title therein and thereto, with full power to said Tate to collect, sue the same, and to receipt therefor as fully as we or either of us could do.  As witness our hands at Ellsworth, in the State of Kansas, this eighteenth day of May, A.D. 1874.

" MYERS & GREEN."

There was a judgment for the plaintiff for $12,203.31. The defendants thereupon sued out this writ, and assign for error that the court below erred, —

1. In permitting the plaintiff to read in evidence the written assignment dated Nov. 1, 1872, signed " Myers & Green, by Wm. Green."

2. In refusing to allow the defendants to prove that they were induced to execute the bond sued on by the false and fraudulent representations of Myers & Green and their agents and attorneys.

3. In instructing the jury that " the assignment of Nov. 1, 1872, by Green to Tate, transferred, under the evidence in this action, the bond sued on in this case, with the right of Tate to sue for Green's interest therein."

4. In instructing the jury that " if Slavens, before the assignment to him of Ferguson, Slavens, & Co.'s claim against Myers & Green, had notice of the assignment of the bond in suit, to Tate, you will disallow the defendants' so-called set-off."

5. In instructing the jury that " if Slavens had such information or knowledge of the assignment as would be sufficient to put any reasonable man upon inquiry, when such inquiry, reasonably followed up, would have led to an ascertaining of the truth, he had sufficient notice of such assignment."

6. In instructing the jury that " if the firm of Myers & Green, on the eighteenth day of May, 1874, transferred the judgment and bond by a written assignment, and in such assignment recited that they had theretofore sold the demand against George & Brothers to Tate, and that the bonds connected therewith belonged to Tate, then any notice to Slavens, after such sale, of such sale would prevent the set-off.

in this action, provided such notice was before he obtained the set-off."

7. In instructing the jury that "an assignment of the claim in suit against George & Brothers, or an assignment of the judgment rendered thereon, would also transfer the bond sued on in this action."

8. In instructing the jury that "if the defendant Slavens, before the assignment to him of the claim of Ferguson, Slavens, & Co., had notice of the assignment to Tate of the Myers & Green claim against George & Brothers, you will not allow him or any of the defendants any set-off whatever."

9. In refusing to instruct the jury that "the interest of said Green in said demand has not been proved. The interest of partners in the property of the firm depends on the condition of the accounts between the partners, and the mere statement that Myers & Green were equal partners in business does not show what the interest of either may be in any particular portion of the property."

*Mr. Nelson Cobb* for the plaintiffs in error.

*Mr. John K. Cravens, contra.*

MR. JUSTICE SWAYNE delivered the opinion of the court.

The errors assigned in this case relate to three subjects:—

The admission in evidence by the court upon the trial below of the instrument dated Nov. 1, 1872;

The refusal by the court to permit evidence to be given of fraud by the defendant in error, in procuring from the plaintiffs in error the bond upon which the judgment below was recovered;

And the instructions given by the court to the jury touching the set-off claimed by the plaintiffs in error.

These several topics will be separately considered.

It was in proof that the firm of Myers & Green were largely indebted to Tate. He applied to Myers for payment. Myers said they had a claim against George & Brothers then in suit. He requested Tate to "go up and see Billy Green," and added, "he will let you have the claim against George & Brothers." Tate went to Green, and Green had the instrument in question drawn, and after its execution delivered it to

Tate.   Green further agreed that the judgment in the pending suit should be assigned to Tate as soon as it was recovered.

Tate subsequently saw Myers and showed him the assignment.   He said it was "all right," and Tate thereupon gave up to him the notes of Myers & Green to the amount of the claim against George & Brothers.

The bond was given to prevent the execution of a writ of attachment issued for the seizure of the property of George & Brothers, to secure the payment of any judgment Myers & Green might recover against them.   It was conditioned for the payment of such judgment.

Viewing the transaction in the light of this evidence, it cannot be doubted that it was the intention of both parties that the bond should be transferred to Tate, and we think that intent was made effectual.   The difficulty, so far as there is any, has arisen from the unskilfulness of the draftsman of the instrument.   The assignment could have been made by one of the partners, and he could have made it by parol.   *Jones* v. *Guaranty & Indemnity Company*, 101 U. S. 622; Story, Partn., sect. 101.   The signature of the firm name shows that the instrument was intended to be the act of both partners, and effect must be given to it accordingly.   This can be done upon settled legal principles and analogies.

If a promissory note be drawn, "I promise to pay," &c., and is signed by more than one person, it is the joint and several note of all who sign it.   *Clerk* v. *Blackstock*, 1 Holt, 474; *Hunt, Adm'r*, v. *Adams*, 5 Mass. 358; s. c. 6 id. 519.

. If one party only be named as obligor in the body of a bond, and others sign it also, all are bound.   In no other way can any effect be given to the signatures of those not so named.   The intent is clear, and that is sufficient.   *Parks* v. *Brinkerhoff*, 2 Hill (N. Y.), 663; *Perkins* v. *Goodman*, 21 Barb. (N. Y.) 228.

A bond to B.'s executors, B. being alive, is a bond to B. *Langdon* v. *Goole*, 3 Lev. 21.

In *Simpson* v. *Henderson* (1 Moo. & M. 300), a written contract stipulated that a ship should be ready to take freight on board "*forthwith.*"   Parol evidence was admitted to show the surrounding circumstances when the contract was made.

Lord Tenterden said: "The word 'forthwith,' indeed, in strictness, means immediately; but it is plain this cannot be the construction to be affixed to it here. It was known that she required some repairs; at least, to be coppered, and some time must be allowed for that." He left it to the jury to say whether, under the circumstances, the vessel had been made ready within a *reasonable time.*

"Debt on an obligation conditioned to pay £7, by 2*s.* a week until the £7 were paid, and if he failed of the payment of the 2*s.* at any of the days wherein it ought to be paid, the obligation to be void, or else to remain in full force. The defendant pleads that he did not pay the 2*s.* on one of the days wherein it ought to be paid. The plaintiff demurs. . . . The court held that the condition should be taken distributively, by referring particulars to particulars, viz. that if he paid the £7 the obligation should be void; but if he failed of paying the 2*s.* at any of the days, it should be in full force; to which the rest agreed; for the obligation shall not be of no effect if by any means it may be made good." *Vernon* v. *Alsop,* 2 Lev. 77. It has been said by an eminent writer that " words are the counters of the wise and the money of the unwise." Their office is to symbolize ideas. The intent of the parties is the contract, and whenever that is ascertained, however inartificially expressed, it is the duty of courts to give it effect.

As between Myers & Green and Tate, the title of Tate was good by estoppel. The consideration which passed from him to them made it so.

A title to real estate thus acquired is effectual either for attack or defence in an action of ejectment. *Dickinson* v. *Colgrove,* 100 U. S. 578.

The court below committed no error in this connection.

Proof of fraudulent representations by Myers & Green, beyond the recitals in the bond, to induce its execution by the plaintiff in error, was properly rejected.

It is well settled that the only fraud permissible to be proved at law in these cases is fraud touching the execution of the instrument, such as misreading, the surreptitious substitution of one paper for another, or obtaining by some other trick or device an instrument which the party did not intend to give.

*Hartshorn et al.* v *Day*, 19 How. 211; *Osterhout* v. *Shoemaker and Others*, 3 Hill (N. Y.), 513; *Belden* v. *Davies*, 2 Hall (N. Y.), 433; *Franchot* v. *Leach*, 5 Cow. (N. Y.) 506. The remedy is by 'a direct proceeding to avoid the instrument. *Irving* v. *Humphrey*, 1 Hopk. (N. Y.) 284.

The evidence was properly rejected for another reason.

Where a party reaps the benefit which the bond gives in such cases, and is called upon to respond, he is not permitted to repudiate the obligation he has assumed.

In a case not unlike this Judge Story said: " The question is not new, and I am entirely satisfied that where the claimant voluntarily accepts a delivery on bail, it is an estoppel of his right to contest the validity of the security. He accepts or not at his pleasure, and it would be grossly inequitable if he might lie by until the close of the cause, receive and use the property, and then, by detecting an error in the bond, set the whole judgment of the court at defiance." *The Brig Struggle*, 1 Gall. 475. See also Bigelow, Estoppel, p. 206, and *post*, and 2 Whart. Evidence, sect. 1039, and the authorities cited by each author.

The instructions as to the set-off or counter-claim were as favorable to the plaintiffs in error as they had a right to ask. The jury, upon the evidence, found against them. With this result, there being no error of law involved, this court has nothing to do.

It is insisted that the court erred in instructing the jury that " an assignment of the claim in suit against George & Brothers, or an assignment of the judgment rendered thereon, would also transfer the bond sued upon in this action."

In this there was no error. The instruction was in exact conformity to the law upon the subject. *Bowdoin* v. *Colman*, 6 Duer (N. Y.), 182; *Craig* v. *Parkis*, 40 N. Y. 181; *Claflin* v. *Ostrom*, 54 id. 581; *Pattison* v. *Hull*, 9 Cow. (N. Y.) 747; *Hosmer* v. *True*, 19 Barb. (N. Y.) 106.

All the assignments of error are without merit.

*Judgment affirmed.*