RUFE v. COMMERCIAL BANK OF LYNCHBURG, VA.

(Circuit Court of Appeals, Fourth Circuit. February 6, 1900.)

No. 314.

**1. JUDGMENTS—ASSIGNMENT.**

Promises by a debtor to pay the debt out of the proceeds of a judgment in a pending action, and to assign such judgment in payment of the debt, do not amount to an equitable assignment, as against other creditors, where there was no assignment in fact, and the debtor afterwards refused to execute such an assignment.

**2. SAME.**

An 'instrument executed by a judgment creditor, giving an irrevocable power of attorney to his counsel to collect the judgment, and making it his duty, after paying his own fees, to pay a sum due from the judgment, creditor to a third person, and providing that "this assignment shall in no wise control" such counsel in the management of the cause or his right to effect a compromise, operates as an assignment of the judgment.

**3. SAME.**

Pending an appeal from a judgment, the judgment creditor assigned it to his attorney, to pay, first, his own fees, and then a debt due to a third person, and reserving a right to the attorney to compromise the action. Afterwards the judgment was set aside, and a compromise judgment entered for a much less sum. *Held*, that the assignment operated as an assignment of the latter judgment.

Appeal from the Circuit Court of the United States for the Western District of Virginia.

This is an appeal from the circuit court of the United States for the Western district of Virginia. 92 Fed. 789. The matter in issue is the right to the proceeds of a judgment obtained, on the law side of that court, in the name of F. M. Threadgill against Thomas C. Platt, president of the United States Express Company. The parties to this issue are the Commercial Bank of Lynchburg, Va., on the one side, and P. Rufe on the other.

F. M. Threadgill was a dealer in cigars and tobacco in Lynchburg. He held a large claim against the United States Express Company, a joint-stock company, of which Thomas C. Platt was the president and representative. He was indebted largely to P. Rufe, and also to the Commercial Bank. His claim against the express company arose from the transportation by it of many boxes of cigars intrusted to it by him, and which were either lost or not delivered by it. Rufe was a manufacturer of cigars, and Threadgill owed him a large sum of money for the purchase of cigars,—the same cigars which he had intrusted to the express company, for which he was suing it. He also was a large debtor to the Commercial Bank for moneys lent in his business, and also to aid him in his contract with the express company. Threadgill

made efforts to settle with the express company before suit, and, failing this, he brought his action on the law side of the circuit court at Lynchburg. On 27th April, 1894, he obtained a verdict for $54,371, and entered judgment accordingly. During the negotiations before suit, and pending the suit and after judgment, Mr. Threadgill wrote many letters to Rufe, in which he declared a fixed intention to pay him out of the results of his suit against the express company and the judgment thereon. It is claimed, upon the part of Rufe, that these letters amount to an equitable assignment of his claim against the express company to Rufe. A careful examination of the letters betrays an intention to pay Mr. Rufe, perhaps a desire to assign the claim on terms, but they do not show that this intention was ever carried into effect. This is demonstrated by two facts in the record. In a letter of Capt. Charles M. Blackford to the attorney of Mr. Rufe, dated as late as 21st September, 1897, this gentleman says: "He [Mr. Threadgill] still seems unwilling, however, to give any assignment which will give Mr. Rufe any priority, should the claim be collected, or any part thereof." This letter was written after the transaction with the Commercial Bank, hereafter to be related. The other fact is that Mr. Rufe, after the verdict for $54,371, instituted attachment proceedings in the state of New York against the United States Express Company, seeking to recover this money, as money due to Threadgill, to pay Threadgill's debt to him. Mr. Threadgill, while he was encouraging Mr. Rufe, also encouraged the bank. He repeatedly expressed his intention to pay the bank out of the proceeds of this claim, using pretty strong language. The cashier of the bank was so much impressed by this that he was of the opinion that a distinct understanding existed between Threadgill and the bank that the latter should have an interest in any money recovered from the express company, after counsel fees were paid; that "we [the bank] should have the first money after the counsel fee was paid," and even stronger than that. In this case, also, however marked the expression of intention, there was no positive act, irrevocable in its character, dignified enough to be called an assignment. In his answer, Mr. Threadgill does not admit that he made any assignment to Rufe in these letters, or in any way, prior to the second trial of his case, which will be alluded to hereafter.

Verdict and judgment having been rendered for F. M. Threadgill against the express company, a writ of error was granted to the supreme court of the United States, and the cause appeared on the docket of that court. Before the case was reached, upon discovery of certain facts not necessary to be mentioned here, a bill was filed on the equity side of the circuit court for the Western district of Virginia, setting out these facts, and praying an injunction against the enforcement of that judgment. This bill was answered, and the cause was at issue. Pending the cause, on 22d January, 1897, F. M. Threadgill executed the following paper: "Know all men by these presents that the undersigned, F. M. Threadgill, hereby constitutes and appoints Charles M. Blackford his attorney in fact, as well as in law, to collect from the United States Express Company the amount of a judgment in his favor obtained at the April term, 1895, of the circuit court of the United States for the Western district of Virginia, in a suit wherein he was plaintiff, and Thomas C. Platt, etc., was defendant, and the amount of which judgment is $54,371.00, with interest from the 27th day of April, 1894. This power of attorney shall be irrevocable. It shall be the duty of the said Charles M. Blackford, upon collecting the said judgment, or so much thereof as may be collectible, after paying the late firm of Kirkpatrick & Blackford their fee, as per written contract with said Threadgill under date January 8, 1896, to pay to the Commercial Bank of Lynchburg the sum of $8,259.00, with interest thereon from the 9th day of February, 1897, and also to pay to the said bank any sum which the said bank may, at the time of such payment, have paid out by way of premium on sundry policies of insurance upon the life of the said Threadgill, held by the said bank under an assignment made by him and wife to the said bank on the 18th day of May, 1896, with any interest which may have accrued thereon. But it is distinctly understood that this assignment shall in no wise control or affect the judgment of the said Kirkpatrick & Blackford in the management of the said cause, and they shall have the same power to compromise the same which they had before this assignment was made."

The result of the proceeding in equity was an injunction against the enforcement of the judgment upon the verdict of April term, 1895, upon the condition of a new trial of the law case. This latter case was heard in December, 1897, and during the trial a compromise was reached, resulting in a verdict for Threadgill of $6,000. The counsel for Mr. Rufe, who were present at this trial, taking no part therein, but watching the interests of their client, were consulted by counsel for Threadgill before the latter would consent to the compromise. After the compromise was concluded and communicated to the court, the presiding judge instructed the jury to find a verdict for plaintiff for $6,000. Before the verdict was rendered by the jury, counsel for plaintiff, Threadgill, asked the presiding judge "to direct that the verdict, whatever it might be, when rendered by the jury, was for the use of P. Rufe, a creditor of Threadgill, subject to a lien for counsel fees." Counsel representing the Commercial Bank objected to this, and, after discussion, the presiding judge ordered that a memorandum of the statement of Threadgill's counsel be made upon the record.

Threadgill had entered into a contract with his attorneys before the trial, fixing their compensation, at all events, at $10,000. Of their own accord they reduced their fees to $2,000. This amount, with the consent of all parties, without prejudice, has been paid. There remains the sum of $4,000. This last-named sum is the subject-matter of the case before us.

The Commercial Bank of Lynchburg filed its bill, claiming that under assignment from Threadgill they are entitled to the remainder of this judgment, and it prayed that it may be so decreed. To this bill Thomas C. Platt, Charles M. Blackford, survivor of Kirkpatrick & Blackford, who were Threadgill's attorneys, F. M. Threadgill, and P. Rufe are parties defendant. Mr. Platt answers, admitting that he has in hand to pay on this judgment the sum of $4,000, and asks leave to pay this sum into court, and thereupon he disclaims all interest in the suit. Mr. Blackford also disclaims. Mr. Threadgill answers, recognizing Rufe as entitled to the fund by reason of the occurrence at the trial. Rufe claims the fund as under assignment from Threadgill, who, as he claims, began and conducted the suit for his use. The cause, being at issue, was heard by the court below on the pleadings and testimony, and after argument. The decree is wholly in favor of complainant, who is held entitled to the fund. All the defendants but Mr. Rufe are dismissed from this suit. He has been allowed an appeal. The case comes here on exceptions.

Beverley T. Crump and F. S. Kirkpatrick, for appellant.

Randolph Harrison, for appellee.

Before SIMONTON, Circuit Judge, and BRAWLEY and WADDILL, District Judges.

SIMONTON, Circuit Judge (after stating the facts as above). Both parties in this appeal claim under F. M. Threadgill. It is evident that Threadgill, up to the trial in December, 1897, had made no assignment of his claim against the express company to Rufe. He had professed and promised, and was liberal in expressions of future intentions. But no act was done carrying the professions, promises, and intention into effect. This is manifest from the letter of Mr. Blackford of 21st September, 1897, and by Mr. Rufe's own action of attachment in New York. "An agreement to pay out of a particular fund, however clear in its terms, is not an equitable assignment. A covenant in the most solemn form has no greater effect. The phraseology employed is not material, provided the intent to transfer is manifested. Such an intent and its execution are indispensable. The assignor must not retain any control over the fund, any authority to collect, or any power of revocation. If he

do, it is fatal to the claim of the assignee. The transfer must be of such a character that the fund holder can safely pay, and is compellable to do so, though forbidden by the assignor." Christmas v. Russell, 14 Wall. 69, 20 L. Ed. 762; Removal Cases, 100 U. S., at page 477, 25 L. Ed. 600; Story, Eq. Jur. § 1035a, note 1.

The course taken by Threadgill's counsel at the trial, in December, 1897, just before verdict rendered, would have vested the verdict in Rufe, if it were then under the control of Threadgill, or if he had not assigned it to some one else. This depends upon the right of the bank. Their case is this: After repeated declarations and promises from Threadgill, with regard to the protection of the debt to the bank out of the express company's claim, he executed the instrument set out above. That instrument, dated January 22, 1897, consists of three parts. It appoints Mr. Charles M. Blackford his attorney in fact, as well as at law, to collect from the United States Express Company the amount of the judgment of April term, 1895, of $54,371. And this power of attorney is declared irrevocable. It thus transfers from Threadgill the dominion and power over the judgment, and vests these absolutely in Mr. Blackford. It then declares the interest coupled with the power which made the latter irrevocable. It makes it the duty of the said Charles M. Blackford, upon collecting the judgment, or so much thereof as may be collectible, first to pay the late firm of Kirkpatrick & Blackford their fee as per contract, next to pay the Commercial Bank of Lynchburg the fixed sum of $8,259 and interest thereon, and next any sums the bank may have paid on life policies of said Threadgill. It thus constituted Mr. Blackford a trustee for these purposes. And, finally, it declares that this assignment shall in no wise control the judgment of that legal firm in the management of the case, or in their power to compromise it, which they had before this assignment was made. Thus, the attorney was invested with an interest in the judgment itself, with the power to control it. This being the case, the instrument operated as an assignment. As is said in Hunt v. Rousmanier's Adm'rs, 8 Wheat. 205, 5 L. Ed. 597:

"If the interest passes with the power, and vests in the person by whom the power is to be exercised, such person acts in his own name. The estate, being in him, passes from him by a conveyance in his own name. He is no longer a substitute acting in the place and name of another, but is a principal acting in his own name, in pursuance of the powers which limit his estate."

See, also, Taylor v. Benham, 5 How. 269, 12 L. Ed. 147.

It is contended that the irrevocable power of attorney did not give Mr. Blackford any interest in the judgment, but only in the proceeds of the judgment. The judgment is nothing but the adjudication of the court in respect to the cause of action. McNulty v. Hurd, 72 N. Y. 521. It furnishes the means of enforcing the collection of the debt. "It is impossible to separate them. The judgment would be barren, nor can we conceive of its existence without the debt." Pattison v. Hull, 9 Cow. 747. The debt is the principal thing. By whatever terms the assignment was made, if the debt passed all rights and remedies for its collection also passed with it. The right to the debt, as evidenced by the judgment

against the defendants, cannot exist in the hands of different persons. One cannot hold the judgment, and another the debt. They are inseparable. Bolen v. Crosby, 49 N. Y. 183. So, when the instrument passed the whole sum evidenced in the judgment, and devoted it, in the hands of Mr. Blackford, to certain specified uses, with that passed also "all the rights and remedies for its recovery and collection"; that is to say, the judgment and its incidents. See, also, Institute v. Kauffman, 18 Wall. 154, 21 L. Ed. 776. In Hunt v. Rousmanier's Adm'rs, the borrower agreed to secure the lender. To this end a power of attorney was executed by the borrower, authorizing the lender to sell two vessels, property of the borrower, and to apply the proceeds of sale to his debt. The question was, was it such a security as was agreed upon? The court held that it did operate as a security, and that it was as complete as a mortgage would have been, only not as safe; this because, not being irrevocable, the death of the borrower would revoke it. So the power of attorney operated as an assignment. The circumstances of the case at bar strengthens this view. Threadgill, being indebted to the bank, had made repeated promises, and had as repeatedly declared his intention, to secure it by this judgment. So strong were his assurances that the bank officers speak of it as a complete understanding to this effect. Finally, he is induced to act, and, carrying out his promises, he executes this instrument. Its language denotes its purpose. Twice in the paper itself it is spoken of as "this assignment." When the instrument was executed, Mr. Kirkpatrick, one of his attorneys, was present, strongly objecting to it, and doing everything he could to prevent Threadgill from executing it. He realized its effect on Rufe's claim, and he believed that Threadgill was bound to protect Rufe. Threadgill, however, declared that he had pledged his word as a Christian gentleman to carry out his verbal contract with the bank when called on to do so, and that whether it ruined Mr. Rufe or himself or the express company or anybody else he was going to carry out his pledge to the bank, and thus he signed the paper.

This instrument, therefore, being an assignment, what is its effect? Was it defeated because the judgment of April term, 1895, was set aside, and another judgment obtained on the same cause of action,—the judgment under which $6,000 was recovered? At the time this power was executed, the judgment recovered in April, 1894, was in great jeopardy. It was threatened by two formidable modes of attack,—the writ of error in the supreme court, and the bill in equity in the circuit court. Threadgill's counsel, in a letter written in 1896, speaking of it, says that Threadgill incurs a strong chance of losing the greater part, and possibly every dollar, of his claim. For this reason, manifestly, the last clause was inserted in the power of attorney reserving to these gentlemen their full power of managing the cause and of compromising the same. The assignment of the judgment carried with it the claim which was the cause of action. George v. Tate, 102 U. S. 564, 26 L. Ed. 232; Pattison v. Hull, 9 Cow. 747. "The assignment of a judgment which was void, because in excess of the jurisdiction of the court, has been

held to transfer the debt for which the judgment was entered. And it seems that the assignment of a judgment necessarily carries with it the cause of action on which it is based, together with all the beneficial interest of the assignor in the judgment and all its incidents." Freem. Judgm. (Ed. 1886) § 431; Brown v. Scott, 25 Cal. 189. This being so, no act of Threadgill taken after the execution could affect the rights of the bank, nor can the declaration of his attorneys, made in open court, have any effect, that the proceeds of the verdict then about to be taken were the property of Rufe. They could only have done this under instructions from Threadgill.

It has been suggested that the last clause in the power of attorney saving to Messrs. Kirkpatrick & Blackford the right to exercise their judgment in the management of the said cause, and the same power to compromise the same which they had before this assignment was made, in effect nullified the preceding parts of the instrument, and gave them full power to compromise by paying Rufe, and disappointing the bank. Even if the construction of this clause was doubtful, such a construction would violate the rule, "Ut res magis valeat, quam pereat." It would defeat the purpose of the instrument altogether, and operate a fraud on the bank. But the clause is not of doubtful construction. The judgment was seriously threatened by two formidable modes of attack. Messrs. Kirkpatrick & Blackford were uncertain—perhaps, we may say, were apprehensive—of the result. Experienced and able management of the cause —of the whole cause, and not of this incident only—was necessary. Who could better be intrusted with this management than these able counsel? In its result Threadgill, these gentlemen, and the bank were vitally concerned. Therefore there was to be no change of counsel in meeting the dangers of the future. They retained a power to compromise, because, from the circumstances surrounding the cause, a compromise was inevitable, perhaps was necessary, in order to escape total defeat. But what sort of a compromise? Clearly, it must be one affecting the interests of those interested in the cause and its judgment,—a sacrifice of a part of their interest to secure the rest of it, not an abandonment or destruction of it, or a transfer of it to some one else. Mr. Blackford was, to all intents and purposes, a trustee for the bank. He could never have entertained the idea of taking their interest and of giving it to another.

It has been finally suggested that inasmuch as the verdict was only for $6,000, and as Kirkpatrick & Blackford had the first lien on it for a fee of $10,000, they had the right, if they chose, to give a part of their verdict to Rufe. But the record shows that these gentlemen, with great generosity, voluntarily reduced their claim to $2,000, leaving the remainder to be disposed of as right should appear. This ends the contention on that point. The decree of the circuit court is affirmed, each party paying his own costs in this court.