## DUNN v. PRUDENTIAL INS. CO. OF AMERICA.

No. 3365.

District Court, D. Minnesota, Fourth Division.

Oct. 15, 1934.

Irving J. Clark, of Minneapolis, Minn., for plaintiff.

Shearer, Byard & Trogner, of Minneapolis, Minn., for defendant.

NORDBYE, District Judge (after stating the facts as above).

Defendant takes the position that, in that it has interposed the defense of an equitable plea, the proper practice is to order the equity cause transferred to the equity side of the court. It maintains that this practice is implied from the language to be found in 28 USCA § 398, and recognized in Liberty Oil Co. v. Condon Nat. Bank, 260 U. S. 235, 43 S. Ct. 118, 67 L. Ed. 232, which gives to the defendant the same rights as if it had filed a bill embodying the relief prayed for in said answer. Defendant further advances the contention that the fraud set up in its answer cannot be proved at law, and that a court of equity is the only tribunal in which the defendant can avail itself of the fraud which it contends that the insured perpetrated; that the fraud refers to a representation which induced defendant to issue the policy, and does not pertain to the execution of the instrument; that is, the fraud occurred in the application, in the negotiations, so to speak, which defendant contends is cognizable only in equity, as distinguished from the fraud which goes to the question of the legal existence of the instrument. Defendant admits that fraud may be interposed as a defense to an instrument where there was no meeting of the minds, and hence no contract came into existence, but that only equity can vitiate a contract where fraud occurred in the inducement. Defendant refers to the often-cited cases of Hartshorn v. Day, 19 How. 211, 222, 15 L. Ed. 605, and George v. Tate, 102 U. S. 564, 26 L. Ed. 232.

In Hartshorn v. Day, supra, the court stated:

"The general rule is, that in an action upon a sealed instrument in a court of law, failure of consideration, or fraud in the consideration, for the purpose of avoiding the obligation, is not admissible as between parties and privies to the deed; and, more especially, where there has been a part execution of the contract. The difficulties are in adjusting the rights and equities of the parties in a court of law; and hence, in the States where the two systems of jurisprudence prevail, of equity and the common law, a court of law refuses to open the question of fraud in the consideration, or in the transaction out of which the consideration arises, in a suit upon the sealed instrument, but turns the party over to a court of equity, where the instrument can be set aside upon such terms as, under all the circumstances, may be equitable and just between the parties. A court of law can hold no middle course; the question is limited to the validity or invalidity of the deed.

"Fraud in the execution of the instrument has always been admitted in a court of law, as where it has been misread, or some other fraud or imposition has been practised upon the party in procuring his signature and seal. The fraud in this aspect goes to the question whether or not the instrument ever had any legal existence. ([Vrooman v. Phelps] 2 Johns. [N. Y.] 177; [Dorr v. Munsell] 13 Johns. [N. Y.] 430; [Franchot v. Leach] 5 Cow. [N. Y.] 506; [Stevens v. Judson] 4 Wend. [N. Y.] 471; [Taylor v. King] 6 Munf. [20 Va.] 358 [8 Am. Dec. 746]; [Wyche v. Macklin] 2 Rand. [23 Va.] 426; [Stoever v. Weir] 10 Serg. & R. [Pa.] 25; [Stubbs v. King] 14 Serg. & R. [Pa.] 208; [Mordecai & Wanroy v. Tankersly] 1 Ala. 100; [Burrows & Jennings v. Alter] 7 Mo. 424; [Ingersoll v. Long] 4 Dev. & Bat. [20 N. C.] 436; C. and H., Notes, part 2, p. 615, Note 306, ed. Gould & Banks, 1850.)"

In George v. Tate, supra, the court used the following language (page 570 of 102 U. S.): "It is well settled that the only fraud permissible to be proved at law in these cases is fraud touching the execution of the instrument, such as misreading, the surreptitious substitution of one paper for another, or obtaining by some other trick or device an instrument which the party did not intend to give. Hartshorn et al. v. Day, 19 How. 211 [15 L. Ed. 605]; Osterhout v. Shoemaker and Others, 3 Hill (N. Y.) 513; Belden v. Davies, 2 Hall (2 N. Y. Super. Ct.) 466;

Franchot v. Leach, 5 Cow. (N. Y.) 506. The remedy is by a direct proceeding to avoid the instrument. Irving v. Humphrey, 1 Hopk. ch. (N. Y.) 284."

These two cases have caused considerable confusion and diversity of opinion in our federal courts. Some courts have recognized them as authority for holding to the strict common-law distinction between a court of law and a court of equity in all proceedings where fraud is the basis of relieving a contracting party where the instrument is under seal. Great solemnity was attached to an instrument under seal at common law. It was not to be overthrown lightly; consequently, where it appears that there was a meeting of the minds between the contracting parties, and a contract came into being, it was said to require the decree of a chancellor to vitiate any such contract under seal on the grounds of fraud. Judge Taft, in Wagner v. National Life Ins. Co., 90 F. 395 (C. C. A. 6), while not referring to the Hartshorn and George Cases, entered upon a lengthy and learned treatise of the common-law distinction herein referred to, and stated (page 404 of 90 F.):

"Except for the peculiar sanctity anciently attaching to a sealed writing at common law, which is now disappearing, it is difficult to see how there could be any doubt about the right in an action at law to avoid a release by a reply of fraud. The release or surrender is a contract (and in the case at bar not under seal), in which, for a valuable consideration, the releasor agrees to give up all claim and interest in his right of action. In the case of a contract of sale of personal property, a party may, by tendering back either the money or the property, as the case may be, rescind the sale for fraudulent misrepresentation as to any material fact inducing him to enter into the contract, and, if sued on the contract, may plead such rescission and justify it. Why may not one on the same ground and in the same way rescind a release, or, when it is produced against him as a bar to an action, avoid it by showing the fraud? In this case the Wagners tendered the money received to the company, and thereafter declined to acknowledge its validity. This is an ordinary remedy as to all other contracts. Leake, Cont. 320, 321. Why not as to this? On page 802, Mr. Leake says:

"'In the case of a releasing creditor having been induced to give the release by the fraud of the debtor, he may avoid it at his election without the aid of the court, and he may meet a plea of release in an action by replying that the release was obtained by fraud.'

"Our conclusion is, therefore, that it is proper in a suit at law for the plaintiff to meet a plea of release by a replication that the release was obtained by fraud, whether the fraud is in the execution, or in misrepresentation as to material facts inducing execution."

The Hartshorn and George Cases were discussed by the Circuit Court in Such v. Bank of State of New York, 127 F. 450 (S. D. N. Y.), but the court refused to extend the doctrine of these cases where a receipt or release not under seal was attacked on the grounds of fraud in a court of law.

The Circuit Court of Appeals in the Sixth Circuit, in Southern Ry. Co. v. Clark, 233 F. 900, page 905, followed the Wagner Case, and made the following comment:

"It is a long-settled rule that fraud which enters into the execution of an instrument may be proved at law as well as in equity. Hartshorn v. Day, 19 How. 211, 223, 15 L. Ed. 605; George v. Tate, 102 U. S. 564, 570, 26 L. Ed. 232. The rule prevailing in this court (Wagner v. National Life Ins. Co., 90 F. 395, 404, 33 C. C. A. 121), is that in a suit at law it is proper for the plaintiff 'to meet a plea of release by a replication that the release was obtained by fraud, whether the fraud is in the execution, or in misrepresentation as to material facts inducing execution.' This rule was laid down by Judge Taft, and it does not differ in principle from that stated and supported by Judge Lurton when considering a sealed instrument in the Lumley Case, supra, and who said (76 F. 73, 22 C. C. A. 67):

"'If the release had in fact been procured by fraud, he (the plaintiff) could have shown this at law, if the fact that the release was under seal (had been) out of the way.'"

And, referring to the case of George v. Tate, supra, the court stated (page 905 of 233 F.): "We think the decision in that case and the decisions in other cases of a kindred character are sufficiently distinguished by the fact that they deal with sealed instruments, and so, for that reason alone, the rule in the Wagner Case cannot be said to be in conflict with those decisions."

In Kansas City Southern R. Co. v. Martin, 262 F. 241 (C. C. A. 5), the plaintiff brought an action for damages and defendant set up a written release. Plaintiff replied that he was induced to execute the release by reason of fraudulent representations and

sought in an action at law to have the release rendered null and void. The following view of the court is to be found on page 243 of 262 F.: "The sustaining of a replication such as the one in question does not require the giving of any equitable remedy or the application of any peculiarly equitable doctrine. The result is to sustain, on a ground cognizable in a court of law, a denial of the defendant's asserted right to maintain a defense based upon an instrument which is unenforceable because the plaintiff was led into making it by fraudulent misrepresentations. There seems to be no necessity of resorting to a court of equity to prevent the enforcement, by action or by defense, of an unsealed instrument procured by fraud. The cancellation and surrender of such an instrument are not necessary to prevent it being availed of by a party claiming under it. We are of opinion that reason and authority support the conclusion that the issue raised by the reply to the plea setting up the release was properly submitted to the jury."

In a decision handed down by Judge Lowell in Pringle v. Storrow, 9 F.(2d) 464 (D. C. Mass.), will be found a very complete compilation and discussion of most of the cases bearing upon the right of a court of law to entertain a defense of fraud interposed to a release under seal. He discussed the Hartshorn and George Cases, and while he recognized these cases as authority where fraud is directed against an instrument under seal, he clearly indicates that this limitation upon a court of law in considering fraud as a defense should not be extended. The earlier decisions are commented upon, and on page 467 of 9 F.(2d), he stated:

"It is argued, however, that the rule laid down in Hartshorn v. Day and George v. Tate has been overruled by implication, as it is inconsistent with American Mills v. American Surety Co., 260 U. S. 360, 43 S. Ct. 149, 67 L. Ed. 306. At first sight this argument seems sound, and it is given weight by the fact that such was the opinion of Judge Hand in the National Aniline Case (D. C.) 298 F. 755. The learned judge points out that, although it is not so stated in the report in the Supreme Court, the case involved a bond. That case, however, was treated by the court as belonging to the class of cases on insurance policies; two of them, Phœnix Mutual Life Ins. Co. v. Bailey, 13 Wall. 616, 20 L. Ed. 501, and Cable v. U. S. Life Ins. Co., 191 U. S. 288, 24 S. Ct. 74, 48 L. Ed. 188, being cited as controlling. The point at issue in the American Mills Case (as is pointed out by the defendants in their brief in the case at bar)

was whether the defendant had waived his right to a trial on the equity side of the court. The distinction between a sealed instrument and one not under seal is not referred to. It should be noted, also, that an insurance policy, although it has a seal attached to it, is not a specialty. Hogg v. Maxwell, 218 F. 356, 134 C. C. A. 164; Mass. Protective Ass'n v. Kittles (D. C.) 295 F. 572. The point now under discussion did not occur to the mind of the learned judge who delivered the opinion, as he says:

" 'It is conceded by the respondent that its bill in equity in the district court should have been dismissed because it had an adequate remedy at law.' 260 U. S. at page 363, 43 S. Ct. 150.

"I have come to the conclusion, after considerable doubt, that the rule of George v. Tate is still the law, and that Manchester St. Ry. v. Barrett [(C. C. A.) 265 F. 557], is therefore not binding on me. I am strengthened in this opinion by the well-known rule that in the federal courts cases in equity which are to be tried on the equity side of the court 'mean those cases which in the jurisprudence of England were so called, as contradistinguished from cases at common law at the time of the framing of the Constitution.' Un. Pac. R. Co. v. Syas, 246 F. 561, 566, 158 C. C. A. 531, 536, and cases cited. A document under seal could not be attacked at law in England until after the passage of the Common-law Procedure Act in 1854. Prof. Ames in 9 Harv. Law Rev. 49, and cases cited; Whitcomb v. Schultz, 223 F. 268, 138 C. C. A. 510."

The District Court in the Eastern District of New York, in Skinkle v. Lehigh Valley R. Co., 3 F. Supp. 326, page 327, apparently questioned the authority of the Hartshorn and George Cases in view of the trend of modern decisions, and in commenting upon the distinction between fraud as an inducement and fraud which goes to the execution, remarked: "Whether the distinction is of substance at the present day may well be doubted." Citing Wagner v. National Life Ins. Co., supra.

The court has not overlooked the holding of the Eighth Circuit in Pacific Mutual Life Ins. Co. v. Webb (C. C. A.) 157 F. 155, 13 Ann. Cas. 752. Unquestionably, the court in that case strictly adhered to the ruling of the Hartshorn and George Cases, and squarely held that formal deeds of release, whether under seal or not, could not be vitiated in a court of law on the grounds of fraud. The court stated (page 157 of 157 F.): "The conclu-

sion from all the cases in the Supreme Court is that the only fraud which may be availed of in an action at law to avoid a formally executed release of the claim sued on is misrepresentation, deceit, or trickery practiced to induce the execution of a release which the signer never intended to execute, and upon which the minds of the contracting parties never met, and does not include any of those misrepresentations of fact which may be resorted to in order to persuade the claimant to agree to the release as actually made."

Extending the doctrine of the Supreme Court to instruments not under seal is clearly contra to the modern trend of federal decisions. One of the lower federal courts, in Patterson v. Cincinnati, N. O. & T. P. Ry. Co. (D. C.) 5 F. Supp. 595, 596, in commenting upon this decision in the Eighth Circuit and other courts of a similar trend, expressed the opinion that "I think that I am not far wrong in saying that, in any case which may now arise in a federal court involving the question, the decision in the Wagner Case will be accepted and followed."

However, the case of Pacific Mutual Life Ins. Co. v. Webb, supra, must be considered in light of the particular instrument that was then before the court, and which was being attacked in a court of law. Evidently, the court seemed to consider that a formally executed release being attacked for fraud came peculiarly within the arm of a court of equity, and stated (page 158 of 157 F.): "The rescission of the deed of release sought to be accomplished in this case is essentially and traditionally an equitable remedy. It is peculiarly appropriate for the consideration of a chancellor and not of a jury. It depends in many cases upon the exercise of a wise discretion in the light of countervailing equities; is frequently awarded on conditions imposed in the final decree, and only when the remedy is invoked without unreasonable delay. The proof justifying it must be clear, convincing, and unequivocal. In view of these rules governing the administration of an equitable remedy, it is apparent that an action at law which is governed by more inflexible rules is not well adapted to administer that remedy. So manifest is this that rescission of contracts for fraud has, time out of mind, been a well-recognized subject of equitable cognizance."

The insurance contract in the present case was not under seal. When it was entered into, both parties understood and recognized that, under the statutes of this state, the insurance contract would be unenforcea-

ble during the contestable period if the insured was guilty of fraud. There is no principle of public policy or common-law doctrine which should require adherence of the courts to the limited jurisdiction of a court of law under the circumstances presented herein. It is clear that the contract has no earmarks of the studied formality incident to a contract under seal; in fact, it seems to have been taken for granted through a long line of decisions that the defense of fraud was available to the insurer in a court of law, and the cases hereinafter cited from the Eighth Circuit, handed down after the Pacific Mutual Case, supra, seemingly assume that a court of law has jurisdiction to entertain a defense of fraudulent representations in an action to recover the proceeds of the policy. In any event, it must be clear that there is no justification for the assumption that the Circuit Court in this circuit would extend the common-law distinction between a court of equity and a court of law where an insurance policy is involved.

In this case we have a simple defense of fraudulent representations. If the defendant can sustain its allegations in its answer, it has an absolute and complete defense to plaintiff's action on this insurance policy. A verdict in its favor on this defense will be a complete bar to any other claim on the policy in question. This is not a disability policy where there might be some question as to future claims and the defendant be confronted with a multiplicity of suits. There is only one claim on this policy, and that is the death claim, and there are no allegations in the answer which indicate any necessity for the cancelation of the policy in a court of equity. This court has no quarrel with defendant's position that, if the equitable defense must be sustained, then the proper practice would be to transfer the trial of such equitable issues before the court exercises any jurisdiction on the law side, because, clearly, if the equitable issues are decided in the defendant's favor, that would end the lawsuit. However, it is axiomatic that, where the defendant has a complete and effective remedy at law, equity will not take jurisdiction, and the court is clear that in the instant case the defendant can set up its legal defense of fraud in an action at law, and will be afforded as complete and effective relief as it could obtain from a court of equity. It must be evident that defendant cannot deprive the plaintiff of her right of trial by jury merely by seeking to frame equitable issues where an adequate legal remedy is available. This court would be in error in assuming equitable jurisdiction

804

and thus deprive plaintiff of a right of trial by jury, when it appears that defendant has an effective remedy at law.

Section 3370 of Mason's Minnesota Statutes 1927 pertains to misrepresentations by an applicant for insurance, and provides: "No oral or written misrepresentation made by the assured, or in his behalf, in the negotiation of insurance, shall be deemed material, or defeat or avoid the policy, or prevent its attaching, unless made with intent to deceive and defraud, or unless the matter misrepresented increases the risk of loss."

■ This policy is now contestable. Plaintiff has brought this action to recover the proceeds. Whether or not the applicant made the misrepresentations is a question of fact, and the jury can determine whether or not any misrepresentations that may have been made by the applicant were made with an intent to deceive and defraud, and whether the misrepresentations increased the risk of loss. Defendant's right to interpose an equitable defense must be judged in the same way as if it had brought a separate bill in equity to cancel this policy. Equity has taken jurisdiction of a bill to cancel a policy in order to relieve the insurer from the risk of an outstanding policy that has been procured by fraud; but where the loss has occurred and a suit has been maintained by the beneficiary, the court has been cited to no case which holds that, in the absence of exceptional circumstances, a court of law is not the proper tribunal to determine the question of fraud.

In Phœnix Mut. Life Insurance Co. v. Bailey, 80 U. S. (13 Wall.) 616, 20 L. Ed. 501, the court was considering a bill in equity to compel the cancelation of two policies of insurance on the grounds that the policies had been procured by fraudulent suppression of certain material facts. The court dismissed the bill. It appeared that the insured was deceased; claim had been made by the beneficiary for the insurance, but the insurance company refused to pay, and instituted the present action in equity to enjoin the beneficiary from disposing of the policies and praying that the court in equity require her to deliver up the policies for cancellation. The evidence indicated strongly that the insured was guilty of fraud in the procurement of these policies, and the fraud consisted of fraudulent misrepresentations and suppression of facts. The court stated (page 620 of 13 Wall.):

"Suits in equity, the Judiciary Act provides, shall not be sustained in either of the courts of the United States in any case where plain, adequate, and complete remedy may be had at law. * * * That whenever a court of law in such a case is competent to take cognizance of a right and has power to proceed to a judgment which affords a plain, adequate, and complete remedy, without the aid of a court of equity, the plaintiff must in general proceed at law, because the defendant, under such circumstances, has a right to a trial by jury.

"Exceptions undoubtedly exist to that rule, of which there are many to be found in the reports of judicial decisions, and in which preventive relief was administered by injunction. Such relief is granted to prevent irreparable injury or a multiplicity of suits, or where the injury is of such a nature that it cannot be adequately compensated by damages at law, or is such, as, from its continuance or permanent mischief, must occasion constantly recurring grievance, which cannot be removed or corrected otherwise than by such a preventive remedy."

In Griesa v. Mutual Life Ins. Co., 169 F. 509, 513 (C. C. A. 8), Judge Amidon, writing for the court, stated: "It is the settled law of this circuit, and of the Supreme Court, that after the death of assured a suit in equity will not lie for the surrender and cancellation of the policy upon the ground that it was obtained by fraud, for the reason that the company has a plain, speedy, and adequate remedy by interposing the fraud as a defense to an action at law upon the policy. Insurance Co. v. Bailey, 13 Wall. 616, 20 L. Ed. 501; Cable v. United States Life Ins. Co., 191 U. S. 288, 24 S. Ct. 74, 48 L. Ed. 188; Riggs v. Union Life Ins. Co., 129 F. 207, 63 C. C. A. 365."

See, also, Niagara Fire Ins. Co. of New York v. Adams (C. C. A.) 198 F. 822, 823. In that case the opinion of the lower court was quoted in full and the appellate court adopted the reasoning of that opinion. In sustaining the demurrer interposed to a bill in equity, the lower court stated: "Proof of such a fraud, however, would be a complete defense to an action at law on either policy, and although a federal court of equity may in a proper case order the surrender and cancellation of a policy of insurance void for fraud in obtaining it, yet it will not generally do so, after a loss is claimed, when the fraud can be perfectly well established as a defense at law in a suit on the policy. Special circumstances must be shown, threatening irreparable injury to the insurer, if he is denied a preventive remedy."

In Carey v. McMillan, 289 F. 380, page 387 (C. C. A. 8), Judge Booth, writing the opinion, made the following statement: "It is contended by appellee that, if actions at law were brought by the receiver against the stockholders whose notes he holds, and they should set up fraud as a defense, this issue would have to be tried on the equity side of the court, under section 274b, Judicial Code [28 USCA § 398], citing U. P. R. Co. v. Syas, 246 F. 561, 158 C. C. A. 531; Fay v. Hill, 249 F. 415, 161 C. C. A. 389. The contention cannot be sustained. Fraud may be either a legal or an equitable defense. If asserted simply to defeat plaintiff's cause of action, the issue is tried in the same way as other legal issues."

The District Court in the District of Massachusetts, in the case of Continental Casualty Co. v. Yerxa, 16 F.(2d) 473, had before it a bill in equity seeking to cancel a certain insurance policy on the ground of fraud. It was alleged that the insured had made certain material statements and warranties about his previous health. The insured became insane and his guardian was claiming certain indemnity for total disability under the policy. This bill was brought against the guardian seeking cancellation of the policy. The court dismissed the bill, and stated [page 474 of 16 F.(2d)]: "It is settled that in cases of life insurance, where the insured has died and claim has been made upon the policy, the defense that the policy was fraudulently procured can be made in an action at law upon it, and consequently that under such circumstances a suit to cancel the policy will not be entertained. Insurance Co. v. Bailey, 13 Wall. 616, 20 L. Ed. 501; Cable v. U. S. Life Ins. Co., 191 U. S. 288, 24 S. Ct. 74, 48 L. Ed. 188. On the other hand, it is also settled that, where the loss has not yet occurred, such a suit may be maintained. Boyce v. Grundy, 3 Pet. 215, 7 L. Ed. 655; Buzard v. Houston, 119 U. S. 347, 352, 7 S. Ct. 249, 30 L. Ed. 451. The underlying principle is that a party is entitled to relief in equity from the menace of an outstanding and continuing contract induced by the fraud of the other party to it; but where the contract has ceased to be continuing, having ripened into a completed claim for a money payment, a suit to cancel will no longer be allowed, because the fraud can be shown as a defense to an action at law upon the contract."

Our own Supreme Court, in Bankers' Reserve Life Co. v. Omberson, 123 Minn. 285, 143 N. W. 735, 48 L. R. A. (N. S.) 265, considered an action in equity to cancel a policy after a loss on the grounds of fraud. The fraud consisted of representations alleged to have been made regarding the insured's physical condition. Judge Bunn stated (page 292 of 123 Minn., 143 N. W. 735, 738): "We are wholly unable to see why, if the allegations of the complaint are true, its remedy at law would not be just as speedy, plain, and adequate as the equitable remedy it seeks in this action. If it establishes its defense of fraud, its liability is at an end. Its position is exactly as good as if at the end of a suit in equity the policy had been canceled."

 It seems to me that this language is particularly applicable to the case at bar. The mere fact that defendant has amended its answer and now seeks to cancel the policy does not of itself determine that a court of equity should take jurisdiction. True, if it were necessary to cancel the policy, unquestionably that remedy must be sought in a court of equity, but, as stated in the Omberson Case, "If it establishes its defense of fraud, its liability is at an end. Its position is exactly as good as if at the end of a suit in equity the policy had been canceled."

In American Cyanamid Co. v. Wilson & Toomer Fertilizer Co. (C. C. A.) 62 F.(2d) 1018, the court considered the effect of the statute permitting a plea of equity in an action at law. 28 USCA § 398. The court stated (page 1020 of 62 F.(2d): "Defensive equities are no better under the statute than they would have been before its passage. Laches is as good an objection to an equitable plea as it would have been to a bill to enjoin. And so is the objection founded on 28 USCA § 384 that there is a plain, adequate, and complete remedy at law. The plaintiff suing at law is not to be deprived of his constitutional right to a jury trial and shifted into equity because of a defense which can be made fully effective as a defense at law. American Mills Co. v. American Surety Co., 260 U. S. 360, 43 S. Ct. 149, 67 L. Ed. 306; Henrietta Mills v. Rutherford County, N. C., 281 U. S. 121, 50 S. Ct. 270, 74 L. Ed. 737. We agree with the court below that the equitable defense sought to be made in this case falls before these two objections."

The decision of the Supreme Court in Cable v. U. S. Life Ins. Co., 191 U. S. 288, 24 S. Ct. 74, 48 L. Ed. 188, should set at rest any question as to the right of a court of law to entertain a defense of fraud under the circumstances herein. In affirming the views announced in Phœnix Mut. Life Insurance Co. v. Bailey, supra, Judge Peckham, speaking for the court, stated (191 U. S. 305, 24 S. Ct. 74, 76, 48 L. Ed. 188): "This court has held

that, although there may be power in a Federal court of equity in a proper case to order the delivery up and cancelation of a policy of insurance obtained upon fraudulent representations and suppression of facts, yet it will not generally do so when those representations and suppressions can be perfectly well established in a defense at law in a suit upon the policy, and it therefore affirmed a decree which dismissed, without prejudice, a bill filed for obtaining the delivery up and cancelation of a policy so issued, although the evidences of the fraud were considerable, and a suit on the policy had been begun in an action at law after the bill in equity was filed. Phœnix Mut. Life Ins. Co. v. Bailey, 13 Wall. 616, 20 L. Ed. 501."

It being the court's opinion, therefore, that the defendant has a plain, speedy, and adequate remedy at law, the motion to dismiss defendant's equitable answer must be sustained, and defendant's motion to transfer the trial of equitable issues to the equity side of the court must be denied. Defendant will be given ten days within which to file its amended answer herein.