### WHITCOMB v. SHULTZ.

(Circuit Court of Appeals, Second Circuit. April 13, 1915.)

No. 34.

1. COURTS ⬦⟿342—UNITED STATES COURTS—EQUITABLE DEFENSE IN ACTION AT LAW.

The defense of fraud inducing a contract under seal sued on in a federal court at law is not available, and defendant must resort to equity, in the absence of statute allowing equitable defenses.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 912, 913; Dec. Dig. ⬦⟿342.

Equitable defenses in actions at law, see note to Standard Portland Cement Corp. v. Evans, 125 C. C. A. 5.]

---

⬦⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. JUDGMENT ⟨key⟩403—EQUITABLE RELIEF—RESTRAINING ENFORCEMENT.

A court of equity has jurisdiction in a proper case to restrain proceedings at law, and the jurisdiction may be exercised at any stage of the case, and an injunction may be issued to stay a trial or prevent execution or assignment of the judgment.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 764; Dec. Dig. ⟨key⟩403.]

3. JUDGMENT ⟨key⟩430, 443 — EQUITABLE RELIEF — RESTRAINING ENFORCEMENT.

A court of equity will not interfere with a judgment at law, unless complainant has an equitable defense unavailable at law, or unless he has a good defense at law of which he was prevented from availing himself by fraud or accident, but not by his own or his agent's negligence.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 785, 809, 836, 838; Dec. Dig. ⟨key⟩430, 443.]

4. JUDGMENT ⟨key⟩443—EQUITABLE RELIEF—FRAUD.

Equity will grant relief against a judgment for fraud which relates to the procuring of it, and not to the transaction forming the basis of it.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 785, 836, 838; Dec. Dig. ⟨key⟩443.]

5. JUDGMENT ⟨key⟩403—RESTRAINING ENFORCEMENT—EQUITABLE JURISDICTION.

Where a defense to an action at law on which a judgment was rendered was not available to defendant, but the defense was available in equity, defendant, not guilty of laches, may resort to equity to restrain the enforcement of the judgment.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 764; Dec. Dig. ⟨key⟩403.]

6. EQUITY ⟨key⟩11—JURISDICTION—GROUNDS—FRAUD.

Fraud is an original ground of equitable jurisdiction, and material fraudulent representations are a good defense in equity.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 21, 23, 24; Dec. Dig. ⟨key⟩11.]

7. CONTRACTS ⟨key⟩98—FRAUD—REMEDIES.

One induced by material fraudulent representations to enter into a contract has ordinarily several remedies, including the right to defeat enforcement of the contract when sued on in a court of law, unless the contract relied on is under seal, in which case the defense of fraud is available only in equity, in the absence of statute allowing equitable defenses in actions at law.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 447; Dec. Dig. ⟨key⟩98.]

8. COURTS ⟨key⟩342—EQUITABLE DEFENSES IN ACTION AT LAW.

A defendant in an action at law on a specialty may not, prior to Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1087) § 274b, as added by Act March 3, 1915, providing that in actions at law equitable defenses may be interposed by answer, plea, or replication, without filing a bill on the equity side of the court, interpose a defense of fraudulent representations.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 912, 913; Dec. Dig. ⟨key⟩342.]

9. PRINCIPAL AND SURETY ⟨key⟩39—CONTRACT WITH SURETY—MISREPRESENTATION.

A contract of suretyship is not one requiring the utmost good faith of the creditor or obligee, who need not communicate every material fact which would in the ordinary course of things affect the mind of the other party in entering into the contract, and need only use good faith toward a surety pending the negotiations, and representations forming a ground

⟨key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

for not enforcing the contract must in general relate to· a material fact constituting an inducement to the contract, and it must be the very ground on which the transaction took place, though it is not necessary that it should have been the sole cause.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 82–85; Dec. Dig. ⊗⟶39.]

10. PRINCIPAL AND SURETY ⊗⟶39—CONTRACT WITH SURETY—MISREPRESENTATION.

A sales company contracted with a manufacturing company for˙ the manufacture by the latter of machines. A stockholder of the sales company guaranteed performance by it of its part of the contract. Misrepresentations inducing him to make the contract related to the manufacturing company. *Held*, that the misrepresentations were immaterial, and did not relieve the stockholder from liability.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 82–85; Dec. Dig. ⊗⟶39.]

11. PRINCIPAL AND SURETY ⊗⟶41—LIABILITY OF SURETY—FRAUD.

That a contract has been obtained by fraud justifies a surety's release from his guaranty of performance of the contract by˙ a party thereto, though the party does not sue to annul the contract, but the fraud must relate to material matters.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 78–81; Dec. Dig. ⊗⟶41.]

Ward, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Southern District of New York.

This cause comes here on appeal from a judgment entered upon an order made by the United States District Court for the Southern District of New York, which order was filed August 7, 1914, and which dismissed the bill of complaint on the ground that it did not state a valid cause of action in equity.

James A. Whitcomb was and is a citizen of the state of Oklahoma. George S. Shultz was and is a citizen of the state of New York. The Robertson Sales Company was and is a corporation existing under the laws of the state of New Jersey, as is the Great American Automatic Vending Machine Company. The Robertson Sales Company, hereinafter referred to as the Sales Company, was engaged in the exploitation of certain ˙automatic vending machines which were manufactured for it by one Plumb, who is described as a large and experienced manufacturer of machines operated by clockwork. The machines were manufactured for the Sales Company under certain patents held by it. The machines manufactured by Plumb are said to have been in every way satisfactory, but, on account of Plumb's inability to make deliveries as rapidly as the necessities of the Sales Company's business required, negotiations were entered into with the Great American Automatic Vending Machine Company, hereinafter referred to as the Machine Company, looking to the manufacture of the machines for the Sales Company. On December 3, 1908, the Sales Company and the Manufacturing Company entered into a contract for the manufacture of 10,000 of the machines for the sum of $46,000. That contract contained the following provision:

"Now, therefore, this agreement witnesseth: That for and in consideration of the payment to be hereinafter made by the party of the first part and covenants entered into by the party of the first part, the party of the second part does hereby agree to manufacture for the party of the first part ten thousand (10,000) vending machines like to the model deposited by the party of the first part with the party of the second part, on which patents are pending as aforesaid (except such alterations as have been agreed upon as set forth

⊗⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

below) and all of the dies, patterns, and special tools necessary for the purpose of manufacturing to be completed as follows."

The day after the above contract was signed, the plaintiff, Whitcomb, was informed that, as the Sales Company was a comparatively new company, some of the directors of the Manufacturing Company desired a guaranty, and he was asked, being a stockholder and officer of the Sales Company, to execute an assurance or guaranty that the Sales Company would carry out the terms of the contract. Thereupon the plaintiff executed the following agreement under seal: "In consideration of the sum of one dollar ($1) to me in hand paid by the Great American Automatic Vending Machine Company, and in further consideration of the making of said contract, I do hereby promise and agree to and with them that the within-named Robertson Sales Company, party of the first part, will faithfully perform and fulfill everything in the foregoing agreement on its part and behalf to be performed and fulfilled at the time and in the manner in said contract provided, and I do hereby waive and dispense with any demand upon the said Robertson Sales Company, and any notice of nonperformance on its part."

The Sales Company, subsequently professing dissatisfaction with the manner in which the Manufacturing Company performed the contract, refused to pay for certain machines which had been turned over to it by the latter company. That company thereupon executed to George S. Shultz, the defendant herein, an assignment of its claim. Shultz brought an action at law to recover the damages sustained by the Manufacturing Company. The case coming on for trial, the jury found that the Sales Company was indebted to Shultz, assignee, in the amount of $24,607.95, for which a judgment was rendered against the plaintiff herein as surety.

The plaintiff thereupon commenced this suit in equity in which he asked for an injunction to restrain Shultz from enforcing his judgment or from assigning it. He also asks that a decree be entered for the surrendering up and canceling of the contract of suretyship, and that he be discharged from all liability thereon.

Joseph M. Gazzam, of New York City (Charles F. Carusi, of Washington, D. C., Walter B. Grant, of Boston, Mass., and Joseph M. Gazzam, of New York City, of counsel), for appellant.

Kellogg & Rose, of New York City (Abram J. Rose and Phillip M. Brett, both of New York City, of counsel), for appellee.

Before COXE, WARD, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above).    [1] The plaintiff has come into a court of equity to obtain the cancellation of a contract of suretyship into which he entered, and he asserts that he is entitled to be discharged from all liability therein because of the fraud practiced upon him in inducing him to enter into the aforesaid contract. And as an action at law was brought against him on the contract, and a judgment was obtained in the amount of $24,607.95, which this court affirmed in 215 Fed. 75, 131 C. C. A. 383 (1914), an injunction is sought to restrain the defendant from enforcing it. At the trial of the law action the defendant in that action, who is plaintiff in this, offered evidence tending to show the alleged false and fraudulent representations upon which he now relies, but the evidence was excluded by the trial judge. As the contract was under seal, the defense was of an equitable character, and could not be interposed in an action at law brought in a federal court. The plaintiff has therefore come into the equity court to obtain that relief from the contract which he thinks he is entitled to and which was denied to him at law.

The representations upon which he relies, and which he asserts were fraudulent, are stated in his complaint as follows:

"At the time of said negotiations, which was slightly prior to December 3, 1908, representations were made by or on behalf of the said Manufacturing Company to the plaintiff herein and to the said Sales Company to the effect that the said Manufacturing Company did a large business and had great experience in the manufacture of vending machines; that its factory was so equipped for work of that character, both in machinery and expert mechanics and workmen, as to enable it to meet the demands of the said Sales Company for more rapid deliveries and a larger output, and that, if the said Sales Company should enter into a contract with the said Manufacturing Company, it would at its own plant and under the supervision of its own experts manufacture the machines required by the said Sales Company in substantial compliance with a model shown it, which was one of the machines manufactured by the said Plumb, and that it would make or procure and keep in proper working order for use in its own factory all dies, patterns, and special tools which might be necessary for the manufacture of these particular machines. During the course of said negotiations, it was further represented by and on behalf of the said Manufacturing Company that its facilities for making at its own plant said machines were superior to the facilities of the said Plumb, and that it already had at its factory every machine, tool, and appliance necessary for the making of said vending machines, except the dies, patterns, and special tools which were to be especially made for the manufacture of said machines."

"Plaintiff says that the statements made to him and to the said Sales Company, as an inducement to enter into said contract of December 3 and December 4, 1908, upon the truth of which he relied, and as a result of which he had entered into said contract of suretyship, were in fact wholly false and untrue, and were known by the said Manufacturing Company, and its officers and agents making such representations, to be wholly false and untrue; and that, so far from said factory being suitably equipped for the speedy manufacture and delivery of vending machines of the kind exhibited in said model hereinabove referred to, said factory was as a matter of fact without the necessary appliances and machinery, and without the workmen who were experts in the manufacture of vending machines of said character, or even experienced in this character of work; that so far from said machines being manufactured by said Manufacturing Company, it was never its intention that they should be manufactured in its own plant, by its own machines, or by its own workmen. On the contrary, said Manufacturing Company had the design, at the time said representations were made, of letting out bids to the cheapest bidder in various sections of the country to supply the different parts deemed necessary for the construction of the said vending machines; and, further, its design at the time of making said representations was that only the work of assembling the various parts so secured from other manufacturers should be done at said factory and under the supervision of its own employés. And plaintiff says that each and every one of the representations made to him as an inducement for the execution of the principal contract by his company, and of the contract of suretyship by him, was essentially false, and that almost immediately after the execution of said contracts said Manufacturing Company, so far from carrying out the alleged intentions hereinabove set forth, secured bids from various factories throughout the country, and in fact did nothing more than assemble the various parts so secured."

And he avers that in entering into the contract of suretyship he relied upon the pretended responsibility, skill, mechanical ability, and facilities of the Manufacturing Company; and that, but for his belief in the truth of the representations made, he would not have executed the contract of suretyship upon which the judgment has been obtained against him.

When the case was before this court on writ of error, we did not comment upon the exclusion of this testimony in the action at law.

As the exclusion of the testimony was proper, we disposed of the case upon other points. But as a misunderstanding seems to exist on the part of counsel for appellant in regard to the matter, we shall in a subsequent part of this opinion state fully the reason why the testimony was inadmissible in the former action. We did not hold, as the bill of complaint avers that we did, that fraud in the inducement of a contract of suretyship was a purely equitable defense, and one not cognizable in an action at law. There is not a word in the opinion upon that subject, and if the fraudulent representations relied upon were of such a nature as have no material relation to the contract involved, the exclusion of the testimony either at law or in equity, and whether the contract had been sealed or unsealed, could not have been reversible error.

[2, 3] The complainant has asked that an injunction issue restraining the defendant from assigning or enforcing the judgment which he obtained in his action at law. It is well established that under certain circumstances courts of equity will interfere to restrain proceedings at law, and its jurisdiction to stay legal proceedings may, in a proper case, be exercised at any stage of the legal cause. An injunction may be granted to stay trial, or after verdict to stay judgment, and after judgment to stay execution, and to prevent an assignment of the judgment. In the great case of the Earl of Oxford, 1 Ch. Rep. 1 (1615), Lord Chancellor Ellesmere discussed the principles on which equity restrains proceedings under a judgment obtained at law and declared that:

"The use of the chancery has been in all ages to examine equity in all cases, saving against the king's prerogative."

And that:

"When a judgment is obtained by oppression, wrong, and a hard conscience, the chancellor will frustrate and set it aside, not for any error or defect in the judgment, but for the hard conscience of the party."

By which he simply meant that a court of equity would prevent a party from taking advantage of a judgment if it was inequitable for him to do so. It was in this case that the Lord Chancellor opened his opinion by saying:

"The law of God speaks for the plaintiff. Deut. 28. And equity and good conscience speak wholly for him. Nor does the law of the land speak against him."

And Chief Justice Marshall, 100 years ago, in Marine Insurance Co. of Alexandria v. Hodgson, 7 Cranch, 332, 336, 3 L. Ed. 362, said:

"Without attempting to draw any precise line to which courts of equity will advance, and which they cannot pass, in restraining parties from availing themselves of judgments obtained at law, it may safely be said that any fact which clearly proves it to be against conscience to execute a judgment, and of which the injured party could not have availed himself in a court of law, or of which he might have availed himself at law, but was prevented by fraud or accident, unmixed with any fault or negligence in himself or his agents, will justify an application to a court of chancery."

The rule is undoubted that a court of equity will not interfere with judgments at law, unless the complainant has an equitable defense of

which he could not avail himself at law, or had a good defense at law of which he was prevented from availing himself by fraud or accident, unless by his own or his agent's negligence. Knox County v. Harshman, 133 U. S. 152, 10 Sup. Ct. 257, 33 L. Ed. 586 (1890).

[4-6] The complainant in the case at bar asks to be relieved from this judgment on the ground that he was induced to enter into his guaranty upon which the judgment was obtained, by the fraudulent representations made by the defendant's assignor. It is a well-established principle that equity will afford a remedy where fraud has been practiced in procuring a judgment or decree, but the fraud must relate to the procuring of the judgment or decree, and not to the transaction which was the basis of the decree. Smith v. Nelson, 62 N. Y. 286 (1875); Smith on Fraud, § 235, p. 253; Id. § 225, p. 233. Here the fraud complained of is not fraud in procuring the judgment, but in inducing the complainant to enter into the contract which is the basis of the judgment. It is, of course, true that, if complainant's defense to the action in which the judgment was obtained was one which he could not avail himself of at law, but might avail himself of in equity, and he has not been guilty of laches, he can come into equity to restrain the enforcement of the judgment. That fraudulent representations, if material, constitute a good defense in equity, is not questioned. Indeed, fraud is an original ground of equitable jurisdiction.

[7] When one is induced by fraudulent misrepresentations of a material kind to enter into a contract, it is agreed that he ordinarily has several remedies, and among them is the right to defeat the enforcement of the contract when sued upon in a court of law. See Page on Contracts, vol. 1, § 136, p. 218, and the cases there cited. Fraud vitiates all contracts. Courts of law and courts of equity as a general rule have concurrent jurisdiction in cases of fraud. In Viele v. Hoag, 24 Vt. 46, 51 (1851), the law is laid down as follows:

"The subject of equitable relief in behalf of sureties is one of original jurisdiction in a court of chancery. The peculiar rights of a surety originated in, and are exclusively the growth of, equity. Formerly it was held in several instances that the remedy of the surety was only in equity, and could not be made available in courts of common law. But it is now held as a general rule 'that the liability of sureties is governed by the same principles at law as in equity.' And probably with few exceptions the same considerations which are sufficient in equity to discharge the surety will be available for the same purpose at law. 2 Lead. Cases in Equity, 365, 386, in notes to Ress v. Berrington."

But, while fraud vitiates all contracts, it was necessary to reach it in some regular and authoritative mode, and it was not true that in every case it could be reached in a court of law as well as in a court of equity. Whether it could be reached in a law court depended upon the circumstances of the particular case. Fraud could not be pleaded in bar of an action at law upon a common-law specialty in England until the introduction by the Common-Law Procedure Act of 1854, of pleas in equitable grounds. See Ames, Cases in Equity, vol. 2, p. 122, note, and 9 Harv. L. Rev. 51, where the authorities are collected. And in the United States in the Code states a plea of fraud to a sealed instrument might be good at law. 9 Cyc. 434. But in the federal courts the court of law originally could no more take cognizance of

an equitable defense than a court of equity could entertain a suit upon a purely legal title. Burnes v. Scott, 117 U. S. 582, 587, 6 Sup. Ct. 865, 29 L. Ed. 991 (1886). And the Supreme Court of the United States in 1856 in Hartshorn v. Day, 19 How. 211, 222, 15 L. Ed. 605, declared that in an action upon a sealed instrument in a court of law proof of fraud in the transaction out of which the consideration arose could not be admitted for the purpose of avoiding the obligation, and especially where there had been a part performance of the contract, although fraud in the execution of the instrument might be shown. The doctrine was reiterated by the court in George v. Tate, 102 U. S. 564, 570, 26 L. Ed. 232 (1880). We have applied the rule in a number of cases. Hogg v. Maxwell, 218 Fed. 356, 134 C. C. A. 164 (1914); Drobney v. Lukens, 204 Fed. 11, 122 C. C. A. 325 (1913); De Lamar v. Herdeley, 167 Fed. 530, 93 C. C. A. 239 (1909).

[8] An act of Congress, passed on March 3, 1915, since this case was argued, has changed the law, and hereafter an equitable defense can be interposed in the federal courts in common-law actions. The statute reads as follows:

"Sec. 274b. That in all actions at law equitable defenses may be interposed by answer, plea, or replication without the necessity of filing a bill on the equity side of the court. The defendant shall have the same rights in such case as if he had filed a bill embodying the defense of seeking the relief prayed for in such answer or plea. Equitable relief respecting the subject matter of the suit may thus be obtained by answer or plea. In case affirmative relief is prayed in such answer or plea, the plaintiff shall file a replication. Review of the judgment or decree entered in such case shall be regulated by rule of court. Whether such review be sought by writ of error or by appeal the appellate court shall have full power to render such judgment upon the records as law and justice shall require."

In accordance with the provision of the above act, had it been in force when the action at law was instituted, the matter now in issue in this court might have been disposed of in that proceeding. But not being then in force when the complainant in this suit sought as defendant in the law action to interpose the fraudulent representations upon which he now relies as a defense to that action he was properly not permitted to do so. There was no error in excluding in that action all testimony as to these representations. And as he could not avail himself of the alleged fraud in the law action, he is entitled now in this court to have the effect of those representations upon the validity of his agreement fully considered.

[9] A contract of suretyship is not one requiring uberrima fides on the part of the creditor in the sense in which that expression is used in contracts of marine and fire insurance. And the creditor or obligee is not bound to communicate every material fact which would in the ordinary course of things affect the mind of the other party in entering into the contract. Hamilton v. Watson, 12 Cl. & F. 118 (1845); Wythes v. Labouchere, 3 Dog. & J. 593; White & Tudor's L. C. in Equity (8th Ed. 1912) vol. 2, p. 576. In Brandt on Suretyship (3d Ed., 1905) § 447, the law is stated as follows:

"If any material part of the transaction between the creditor and his debtor is by the creditor, or with his knowledge or consent, misrepresented to the surety, the misrepresentation being such that, but for the same having been

made, either the suretyship would not have been entered into at all, or, being entered into, the extent of the surety's liability might be thereby increased, the surety is in such cases generally held to be not bound by his obligation."

It is no doubt the duty of the obligee to use good faith toward a surety pending the negotiations. But the representations which are claimed as a ground for not enforcing a contract must in general relate to a material fact constituting an inducement to the contract. The fact represented as true must be material to the transaction. If it relates to an immaterial matter, the contract cannot be set aside. It must be the very ground on which the transaction took place, although it is not necessary that it should have been the sole cause. Smith on Fraud (1907) § 61, pp. 77, 78. The law is clear that false or fraudulent representations on a material matter, made to a surety at the time of the execution of the contract or during the negotiations leading up to it, is sufficient ground for the annulment of the contract. Cooper v. Joll, 1 De G. & J. 240; Folmar v. Siler, 132 Ala. 297, 31 South. 719; Roper v. Sangamon Lodge, 91 Ill. 518, 33 Am. Rep. 60. But the surety is liable if the false representation is not material. 32 Cyc. 60; London West v. London Guarantee, etc., Co., 26 Ont. 520.

[10] This brings us to inquire what the contract of suretyship was from which complainant seeks to be relieved. In it he promised and agreed that the Sales Company would—

"faithfully perform and fulfill everything in the foregoing agreement on its part and behalf to be performed and fulfilled at the time and in the manner in said contract provided."

What complainant undertook was that he would be responsible for the faithful performance by the Sales Company of its promises, and he did not undertake to be responsible for the performance by the Manufacturing Company of its promises. None of the representations made, and upon which complainant relies to avoid his guaranty, related to the ability of the Sales Company to perform its part of the contract assumed, and it was that which complainant guaranteed. Complainant was not misled or deceived in any respect concerning his principal, nor was any concealment practiced upon him which in the slightest degree affected the risk he assumed. If there were misrepresentations, as complainant alleges, and his allegation for the purposes of this case must be accepted as true, those misrepresentations related, not to the Sales Company, whose contract he had guaranteed, but to the Manufacturing Company, whose contract he had not guaranteed. No damage could result to the complainant from misrepresentations which did not relate to the obligation the performance of which he had guaranteed.

The Manufacturing Company never agreed to manufacture in its own plant all the parts of the vending machines. It only agreed to manufacture machines substantially like the model submitted to it. And this court has held that it fulfilled its contract according to its terms, although it employed third parties to make some of the parts and then assembled the parts and constructed the machines making them conform to the model. We have closely scanned the allegation of the

complainant in this suit as to the representations which the Manufacturing Company is said to have made, and we fail to find any allegation that the company would not employ any third party to make any part which it might be necessary to make in order to manufacture the machines, or that it would itself make any or all parts in its own plant.

If complainant had guaranteed that the Manufacturing Company would perform its contract, and the question was whether he could be relieved from his guaranty because of the false representations as to the ability of the company to make the parts in its own plant, there would be more reason in the application. But even in such a case the application would fail. For if under the contract the company had the right to have the parts manufactured for it outside its plant, any representations that it was so equipped that it could manufacture the parts inside the plant would be immaterial.

Although the original contract between the Sales Company and the Manufacturing Company did not require the latter to make the parts within its plant, yet if the Manufacturing Company in order to induce complainant to give the guaranty, had promised that it would make them within the plant, the complainant would be entitled to be released from his guaranty by showing that the company failed to do as it agreed. But that is not the case. There is not one word in the record to show that any such promise was asked or made.

The complainant's statement in his complaint that in guaranteeing performance by the Sales Company he relied upon the pretended responsibility, skill, mechanical ability, and facilities, not of the Sales Company, but of the Manufacturing Company, is, in our opinion, altogether beside the case. The inducement by which he was led to give his guaranty is that stated by him under seal in his contract of guaranty, which reads as follows:

"In consideration of the sum of one dollar ($1) to me in hand paid by the Great American Automatic Vending Machine Company, and in further consideration of the making of said contract, I do hereby promise and agree to and with them."

The inducement was the making of the contract between the Sales Company and the Machine Company which the complainant as an officer of the Sales Company wished to have made and carried into effect. Moreover, an allegation that one relies on a certain or specific representation is to be disregarded if the representation is one which is seen to be immaterial. Courts will set aside contracts which have been induced by false representations, where those representations relate to material matters, but never where they relate to immaterial matters, even though the party alleges he relied upon them. It may be that the Sales Company and complainant supposed and intended that the Manufacturing Company would itself make all the parts, but that cannot avail inasmuch as this court has decided that the Manufacturing Company never so agreed.

This is not a suit to cancel the contract to manufacture machines into which the Sales Company and the Manufacturing Company entered. But it is an attempt to cancel the contract of suretyship made

between the complainant and the Manufacturing Company. The complainant in his bill—

"avers that in making said contract of suretyship he relied upon the pretended responsibility, skill, mechanical ability, and facilities of said Manufacturing Company, and that but for his belief in the truth of the representations made he would not have executed said contract; and that he is advised and believes, and therefore avers, that the fraud practiced upon him in inducing him to enter into said contract rendered his own contract of suretyship of December 4th null and void, and that in equity and good conscience he is not and never was under any liability whatsoever to the said Manufacturing Company by reason of the execution of said contract of suretyship."

It may be the duty of a court to direct the surrender of a contract of suretyship if any fraudulent representations are made either to a principal or to a surety, which are material and false, and which are reasonably relied upon by either of them. But it cannot be the duty of a court to cancel a contract of suretyship because of any misrepresentations on immaterial matters which are foreign to the obligations which either the principal or the surety may have assumed. If the Sales Company, the principal in this case, asked because of these immaterial misrepresentations that its contract be canceled, relief would have to be denied. And it has been held that a surety cannot be discharged on the ground of fraudulent representations made to the principal except when that principal would be entitled to avoid the contract. Bryant v. Crosby, 36 Me. 562, 58 Am. Dec. 767 (1853). The fact that such representations as were made to the principal were repeated to the surety cannot be construed as giving to the latter a right of avoidance which is denied to the former on the same representations.

[11] If a contract has been obtained by fraud, the courts have held that that fact would be sufficient justification for a surety's release from his guaranty, even though his principal may have failed to bring suit to annul the original contract. No cause has been brought to our attention in which it is stated to be the law that when a person has obtained an obligation by fraud he can wipe out the fraud by obtaining a surety to the obligation. The contrary is declared to be the law in Bryant v. Crosby, supra. The courts say it is always open to a surety to show that the contract which he has guaranteed was obtained from his principal by fraud or duress. And such was the rule of the civil law. Strahan's Domat, bk. 3, tit. 4, § 5, art. 2; Id. bk. 3, tit. 4, § 1, art. 10; Dig. 44, 1, de exceptionibus, c. 7, § 1; Cod. 2, 24 (23), de fide juss, 2. We do not controvert that proposition. What we do say is that the fraud must relate to material matters.

This is not an application to cancel an executory contract of suretyship, but to release a surety from his obligation to the obligee after the obligee has performed his part of the obligation in strict accordance with its terms and to the amount of $25,000. And this is asked upon the ground that certain untrue representations were made which we find related to immaterial matters. The application must be refused.

Judgment affirmed.

WARD, Circuit Judge (dissenting). The decree appealed from was entered upon an order granting a motion to dismiss the bill. Accord-

ingly we must take all its allegations of fact to be true. They are substantially that the Manufacturing Company, on applying to the Sales Company and subsequently to Whitcomb to act as surety for the faithful performance by the Sales Company of its contract with the Manufacturing Company, represented that it (the Manufacturing Company) had large experience in manufacturing vending machines, with a body of expert workmen, that it would manufacture at its own plant machines like the Plumb model, which statements were wholly false, the Manufacturing Company having no such plant, nor body of expert workmen, and being unable itself to manufacture the machines, and capable only of assembling parts manufactured by others; that Whitcomb relied upon these representations, and would not have executed the contract of suretyship, but for his belief that they were true.

If these allegations could have been proved in the action at law, I do not see how Whitcomb could have been held as surety. The court seems to think that if the principal, the Sales Company, could not set aside the contract, Whitcomb could not be discharged as surety, and that false representations, to be availed of by him, must have been as to the Sales Company and its contract, and not as to the Manufacturing Company. The Sales Company has not been sued on the contract, and there is nothing to show whether it could set it aside or not. Generally speaking, the rights of the surety are the same as those of the principal; if the latter is bound, the former is bound. But clearly a surety may have rights entirely independent of the principal or of his contract; for instance, if one is induced to act as surety on the assurance of the obligee that the principal is owner of property which he does not own, the surety would be discharged; so, if he agreed to act on payment of a premium by the obligee which was not paid, or upon the assurance that the obligee had given the principal debtor six months' credit, whereas he had really given him credit for a year, or that a cosurety would be provided. Many other instances of representations made by the obligee to the surety might be mentioned, in no way connected with the principal or with the transaction between the obligee and the principal, which, if false, would discharge the surety.

It is said that, because the Manufacturing Company was held in the action at law to have furnished machines like the Plumb model, it performed its contract and the surety was therefore bound by his engagement. In that action the surety pleaded that the Manufacturing Company had not performed the written contract with the Sales Company. I quite agree that upon the contract alone the Manufacturing Company was properly held to have the right to use parts manufactured by other persons. The covenant that it would "manufacture" did not imply that it would personally make all the parts; but the surety also pleaded as a defense the matters set up in this bill, and he was not allowed to prove them, on the ground that the contract had not been rescinded, nor any objection made for a year after it had been in operation. This reason could only apply to the Sales Company, which was not a party to the action. Surely the surety could not have rescinded the contract. The testimony was, however, properly ex-

cluded, because such a defense could not be maintained in an action at law upon a sealed instrument. Hogg v. Maxwell, 218 Fed. 356, 134 C. C. A. 164. If proof of the facts alleged had been admitted, the construction of the contract between the Manufacturing Company and the Sales Company would have been, or might have been, different. These detailed representations as to its qualifications would have been wholly unnecessary, if it intended only to supply a machine like the model. Had these allegations been continued as a recital in the contract actually executed, the construction of the word "manufacture" would, or at least might, have been different. Certainly the surety, setting up these false representations made to him, would not necessarily have been bound by the written contract between the Manufacturing Company and the Sales Company.

It seems to me a remarkable result that the judgment in the action at law, where the defense of false representations was properly excluded, should defeat the surety's right to rely upon the same facts in the suit in equity. It should be given its day in court to try out this question. I agree that the court has jurisdiction in the action on the supersedeas bond, but think that the decree in each case should be reversed.