## DOCK CONTRACTOR CO. v. NIAGARA FALLS POWER CO.

## NIAGARA FALLS POWER CO. v. RAYMOND CONCRETE PILE CO.

(District Court, W. D. New York. July 15, 1921.)

Nos. 1845, 1861.

Pleading ⊕236(7)—Party held entitled to amend to set up newly discovered facts.

In actions involving the question of breach of a contract for excavation work, the contractors *held* entitled to amend their pleadings to set up that the estimate of the quantity of material to be excavated, furnished by the other party prior to the signing of the contract, was so variant from the quantity now claimed in its pleading to have been embraced in the contract that the minds of the parties never met in a valid contract.

At Law. Actions by the Dock Contractor Company against the Niagara Falls Power Company and by the latter Company against the Raymond Concrete Pile Company. On motions by plaintiff in the first case to amend complaint, and by defendant in the second case to amend answer. Motions granted.

Griggs, Baldwin & Baldwin, of New York City (Adelbert Moot, of Buffalo, N. Y., and Peter F. McAllister, of Ithaca, N. Y., of counsel), for Dock Contractor Co. and Raymond Concrete Pile Co.

Cohn, Chormann & Franchot, of Niagara Falls, N. Y. (Edward F. Franchot, of Niagara Falls, N. Y., of counsel), for Niagara Falls Power Co.

HAZEL, District Judge. These are motions to amend the complaint of the Dock Contractor Company (causes of action 2 and 3), and the answer of the Raymond Concrete Pile Company in the above-entitled actions. The affidavits show that the Dock Company and the Concrete Pile Company, its assignor, on June 29, 1918, agreed with the predecessor company of the Niagara Falls Power Company, the Hydraulic Power Company of Niagara Falls, N. Y., to make certain excavations at Niagara Falls, N. Y., preparatory to enlarging the power plant there. Payment for the work at first was to be made on the cost plus basis, but later this arrangement was modified by mutual consent, so that the work of excavation would be compensated at a unit price basis upon figures submitted by the Niagara Falls Power Company. It appears that a proposed contract and specification were prepared and submitted by the Power Company to the engineer of the Dock Company, and after an inspection thereof by him the contract or writing was signed and returned to the Power Company. It

⊕═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

contained a provision that the work of excavation and materials fur-nished were defined and described with more particularity in the speci-fication plans and drawings on file in the office of the engineer of the Power Company; that the contract should be construed with refer-ence thereto and that the plans and specification formed a part thereof. It was provided that if the Dock Company should fail and neglect to promptly and diligently prosecute the work the Power Company re-served the right to terminate the contract and itself complete the excavation and work using such materials, tools and appliances be-longing to the contractor as were then upon the premises.

Performance of the contract by the Dock Company or its assignor was in progress when, on September 9, 1918, the Power Company terminated the contract or writing on the ground that the work was not progressing promptly and with diligence, and, seizing the material, supplies, and appliances that had been used by the contracting company in the performance of the work, it completed the excavation. Objec-tion to the termination of the contract was made by the contracting companies orally and in writing, and their right and capacity to com-plete the work within the time limit was asserted. At such time it is claimed about 16,000 cubic yards of excavation had been removed. The contracting company received and accepted payment for the work performed upon the basis set forth in the contract, amounting to $34,436.61.

Concededly the material question of fact in both actions is whether the contracting company, before the termination of the contract, performed its work of excavation with promptness and diligence, sup-plying the materials and enough workmen to efficiently do the work within the time limit, or whether there was a breach in this par-ticular. The moving papers contain testimony tending to show that the copy of the specification delivered to the Dock Company by the engineer of the Power Company before executing the contract misled the former and its assignor, since the quantity of material to be ex-cavated was stated at approximately 9,480 cubic yards at the power house site, while in the original specification the quantity is given as approximately 49,480 cubic yards. It is further asserted that the Dock Company and the Concrete Pile Company first learned of the variance between the original specification (kept by the Power Com-pany) and the carbon copy or duplicate given to the Dock Company, as to the approximate quantities of material to be excavated, from the pleadings of the Power Company in these actions, and the con-tention is that the contracting companies, in signing the contract, re-lied upon the representations of the Power Company contained in the copy specification with respect to such quantity of excavation to be done and adjusted the work accordingly, and hence they should be permitted to amend their pleadings and allege the facts as to any mis-representations made by the Power Company or its predecessor com-pany, or as to any misleading figures in the specification, and to plead that there was no meeting of the minds of the parties at the time the contract was made; that in fact no binding contract was entered into as to the amount of work to be performed because of mutual mistake,

and instead of alleging a right of recovery for damages under a valid contract they should be permitted to plead recovery on a quantum meruit and for the materials furnished.

The Power Company, however, opposes the proposed amendments mainly on the ground that equitable defenses only are included therein, and not any defenses that are pleadable in an action at law. It is contended that the amendments are not proposed in good faith, as may be inferred from the fact that nearly double the quantity of material given in the copy specification was excavated, and besides that it was known and thoroughly understood that the concrete substructures of the power house were in the main to be completed by November 1, 1918, and that it was necessary to excavate solid rock approximately 180 feet long, 110 feet wide, and 27 feet deep before the concrete foundation could be placed; that the contracting company new, or was supposed to know, that approximately 50,000 cubic yards had to be cleared to complete the increase of power development required of the Power Company by the United States for utilization during the war.

It may be as contended that the verity of the affidavits of McMenimen, upon which the motion to amend the pleadings is largely based, is open to challenge, in view of existing facts and circumstances; but any such question is not for present determination, nor in my opinion is it intended by the amendments to complaint and answer to blend legal and equitable causes of action and defenses. The simple proposition is whether the facts and circumstances set forth in the moving papers are of such a nature as to warrant submitting them to the jury for determination as to the making by the parties in controversy of a binding contract. There must, of course, be mutuality in such an agreement, and whether that essential element was present at the time the contract was executed and delivered, or whether it manifested itself in the progress of the work of excavation, must be ascertained from the transaction in its entirety.

This is not a case, I think, where the Dock Company was obliged to sue in equity for cancellation of the contract because of either fraud, misrepresentation, alteration, concealment, or mutual mistake as to the amount of rock to be removed, since the Power Company concededly rescinded the contract before any mistake or misrepresentation, or alteration of contract, was discovered by the contracting companies. As long as the agreement was under performance, the contractor in my opinion was bound by its provisions; that is, he could not abandon the work because of mistake or misrepresentation without repudiating the contract or suing in equity for its cancellation. But if the contractors, from preliminary conversations and the figures in the specification, actually believed that the excavation involved approximately 9,481 cubic yards, and not approximately 49,481 cubic yards, and began work under the mistaken belief that the first-mentioned amount was the approximate estimate, then it may be that a question of fact arises as to the meeting of the minds of the contracting parties. The determination of that question depends upon previous and contemporary transactions. Brawley v. U. S., 96 U. S. 168, 24 L. Ed. 622.

It is doubtless true that a mere variation as to the amount of rock

to be excavated or changes in the work as it progressed would ordinarily be at the risk of the contractor; but in support of the claim of the contractor parties that the figure 4 was prefixed to the figures 9,481 in the original specification without notice, McMenimen swears that he personally made the estimate upon which the work was undertaken before the contract was signed, and that he talked to the engineer of the Hydraulic Power Company as to the amount of excavation that would be required, and he states that he was led to believe there would be approximately 10,000 cubic yards. What was actually said to lead to that belief does not appear; but it is fair to presume that what was said would tend to corroborate the assertion that he expected that the amount of rock that would have to be removed would be in the neighborhood of 10,000 cubic yards. It is not disputed that the figure 4 was added to the original specification after the contract was signed, although that it occurred designedly is denied.

It is a general rule, as stated by Judge Rogers in Whitcomb v. Shultz, 223 Fed. 268, 138 C. C. A. 510, that—

"When one is induced by fraudulent misrepresentations of a material kind to enter into a contract, it is agreed that he ordinarily has several remedies, and among them is the right to defeat the enforcement of the contract when sued on in a court of law. * * * Fraud vitiates all contracts. Courts of law and courts of equity as a general rule have concurrent jurisdiction in cases of fraud."

Cases not infrequently arise wherein, because of failure of the minds of the parties to agree upon certain terms of the contract, or upon certain conditions embodied therein, by mistake or by misrepresentation, or otherwise, courts have determined that no binding contract eventuated. If it is proven that there was in fact no binding contract, the contracting company would not be barred from recovering the reasonable value of the work actually performed. Vickery v. Ritchie, 202 Mass. 247, 88 N. E. 835, 26 L. R. A. (N. S.) 810; The Stanley H. Miner (D. C.) 172 Fed. 486; Pacific Mutual Life Ins. Co. v. Webb, 157 Fed. 155, 84 C. C. A. 603, 13 Ann. Cas. 752; Manchester St. Ry. v. Barrett (C. C. A.) 265 Fed. 557. It is not believed that in this case a situation is presented where the fraud, misrepresentation, and mistake, if there was any, must first be determined as a separate issue. The claim that there was no meeting of the minds of the contracting parties would seem to obviate any such necessity. It may be, as contended by counsel for the Power Company, that an inference is not unwarranted from the conduct of the contractor of an intention to waive the mistake in the figures and any representation in relation to the quantity of rock to be removed, and to continue the work to completion; but this inference is not to be drawn by this court.

It is also contended that the proposed amended answer of the Concrete Pile Company contains ambiguous and equivocal allegations. It is perhaps not free from the criticism of redundancy, but since it apprises the adverse party with sufficient clearness of the claim which it will be required to meet—viz. that the minds of the contracting parties

never met "as to even the approximate amount of work to be performed or the time within which it could be performed, * * * that said guaranty never in fact became a binding contract; * * * that relying upon representations as to the amount of work," etc., it guaranteed that the Dock Company would excavate 9,481 cubic yards—I will not sustain the objection. The proposed amendments are within the sound discretion of the court, and they are allowed because a denial of· the request would preclude testimony in relation to the essential grounds for recovery and of defenses.

The motion is granted; service of amended answer and amended complaint within 15 days.