## HARTMAN GOLDSMITH & CO., Inc., v. FIDELITY & DEPOSIT CO. OF MARYLAND.

Circuit Court of Appeals, Second Circuit.
May 20, 1929.

No. 297.

Fred Boehm, of New York City (Daniel Levy, of New York City, of counsel), for appellant.

Barnes, Avery & Whiting, of New York City (Earl B. Barnes, of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge (after stating the facts as above). ▇▇▇ The plaintiff insists that the motions made at the close of the evidence were such that no issue of fact was left for the consideration of the jury; that by taking an exception to the adverse direction of a verdict, without specifically asking to go to the jury on any question of fact, the defendant waived its right to have the case submitted; and that the ruling must stand, if there was any evidence to support a judgment for the plaintiff. As this was a suit upon a bond, the execution and delivery of which was not denied, the position taken by the plaintiff, if sound, means that we cannot review the entire case, to determine whether or not the verdict was properly directed, but must affirm the judgment because the record shows some evidence to support it. The plaintiff relies on Sigua Iron Co. v. Greene (C. C. A.) 88 F. 207, United States v. Two Baskets (C. C. A.) 205 F. 37, Reis v. Rosenfeld (C. C. A.) 204 F. 282, and Fire Association of Philadelphia v. Mechlowitz (C. C. A.) 266 F. 322. But these cases do not apply to this appeal to the extent the plaintiff would have them. They reflect the governing rule in this court, which is that a party may move for a directed verdict, and, if his motion is denied, still have the right to insist upon disputed issues of fact being submitted to the jury, even though his opponent has also moved for a directed verdict. In addition to the case above cited, see Empire State Cattle Co. v. Atchison, T. & S. F. R. Co., 210 U. S. 1, 28 S. Ct. 607, 52 L. Ed. 931, 15 Ann. Cas. 70. While the trial court might well have elected to treat, as it did, the motions made as motions for a directed verdict, we should, in deciding the question of practice raised by the plaintiff, involving as it does the claimed waiver of a substantial right, not lose sight of the fact that the defendant's motion was not to direct a verdict, but to dismiss the complaint, see Fire Association of Philadelphia v. Mechlowitz, supra, and that, following the direction of a verdict for the plaintiff, there was a disclaimer of any intent on the part of the defendant to have the whole case decided by the court. We do not think that what took place deprived the defendant of the right to have reviewed here the question of whether the trial judge was justified in directing a verdict for the plaintiff. ▇▇ Turning now to a consideration of all the evidence as shown by the record, and reading it, as we must, in the light of what the jury might reasonably have found, if it believed that in support of the defendant's affirmative defense, McCarthy v. New York, New Haven & Hartford Railroad Co., 240 F. 602–608 (C. C. A. 2d), it is seen that, if the case had been submitted, the jury might well have reached the conclusion that the whisky was imported and placed in bond by the plaintiff, using money borrowed of one Kessler to finance the importation; that the principal officers of the plaintiff were acquainted with Kessler, and that a part of Kessler's business was unlawful traffic in intoxicating liquor; that Kessler was to be paid interest on his loan, and was to receive 50 per cent. of the profits resulting from the importation of the whisky; that after the whisky was placed in bond, and the plaintiff had executed and delivered its bond to the government, Kessler started negotiations with one Teitler for the sale to Teitler of the warehouse receipts covering the whisky; that the principal officers of the plaintiff were acquainted with Teitler; that Kessler and Teitler were well known to each other, and that Teitler also was in the illegitimate liquor business; that through the efforts of Kessler, who advanced to Teitler the money to finance the purchase, the plaintiff sold to Teitler the warehouse receipts covering the whisky upon the condition that Teitler would procure and furnish to it an indemnity bond relieving it of the liability it had assumed under its bond given to the government; that Teitler told both Kessler and one of the principal officers of the plaintiff that he did not care to furnish a bond in his own name, and that neither made any reply; that Teitler afterwards, without the aid or knowledge of either Kessler or the plaintiff, applied to one Beecher, an insurance broker, for the bond, and represented to Beecher that his name was Herman Brown; that Beecher then communicated with the plaintiff, to make sure just what kind of a bond was required; that Beecher had some conversation with Brown (Teitler) as to what collateral security he would provide, and that Beecher agreed to let him know what arrangements could be made; that later Beecher took Brown (Teitler) to the new York representative of the plaintiff, introduced Teitler to him as Herman Brown, and there the bond in suit was executed by

Teitler as principal, under the name of Herman Brown, and by the defendant as surety, upon the deposit by Brown (Teitler) with the defendant of a $5,000 Liberty Bond as collateral security; that the bond was executed by the defendant in the belief that Herman Brown was the true name of the man with whom it was dealing; that there was in fact no such person as Herman Brown at the address given to the defendant, or anywhere else, so far as the case shows; that the plaintiff received the bond in suit, knowing that it contained a recital to the effect that Herman Brown had bought the whisky, when it knew that the real transaction was instead a sale of the warehouse receipts to Teitler; and that the plaintiff did not, although it had ample opportunity to do so, inform the defendant of the real identity of the man supposed to be Herman Brown.

We cannot find anything in the record to show any other material facts in the support of the defendant's affirmative defense. There was no evidence to show what investigation, if any, the defendant made before executing its bond to find out whether the man who applied to it for the bond was Herman Brown, or somebody else, or whether there was a man by the name of Herman Brown residing at the address given. Since there was no such man at this address, it would seem that the defendant placed little, if any, reliance upon the name Herman Brown. The application for the bond, made in writing by Brown (Teitler) to the defendant, gave his financial status, which is not claimed to have been false, and also shows his office address as 152 East Forty-Second street, which is the address given in the same application as that of Teitler & Schimmel, brokers, who, among others, were listed, presumably as references. With nothing to show that the name of the applicant for the bond was of itself any inducement to the defendant to execute it, we find the case devoid of evidence tending to show that the defendant would not as readily have executed the same bond as surety for the same man, if he had used his real name, Teitler. There is nothing to lead any one to believe that the defendant knew Teitler, or would have taken any steps to learn of him, or would have been influenced by what it would or could have learned about him, if he had used his own name. Indeed, it would seem to be a fair inference from the evidence that the defendant was indifferent as to the real identity of the man with whom it dealt, and issued the bond perhaps more because of the representations made concerning his financial standing and the deposit of collateral security than because of his reputation or character. There is no claim of deception in anything but his name.

It is said the plaintiff was under some obligation to communicate to the defendant the knowledge it had concerning the identity of Teitler when it accepted the bond. Without discussing the question of what duty the plaintiff did owe the defendant at that time, it is certain that this obligation did not extend to the unrequested disclosure of any fact or facts which would not change or increase the risk or obligation the defendant had assumed. Whitcomb v. Shultz (C. C. A.) 223 F. 268–276. And so the correctness of the ruling below depends upon whether or not the use by Teitler of the name Herman Brown has been shown to have changed in any material way the plaintiff's risk. The burden to show the materiality of the fact concealed rested upon the defendant, and it is apparent that this burden has not been discharged.

While this disposes of the defendant's claim of fraud in the procurement and acceptance of the bond, there remains the charge of conspiracy to defraud. Some of these men were involved in the case of Becher v. United States, decided by this court and reported in 5 F.(2d) 45, and the defendant cites that case with confidence in support of its claim of conspiracy. We take no account of the fact that some of the same men figured in that case and also in this. For all that, the cases are separate and distinct and we look only to the bearing of one on the other purely as a matter of law. The facts proved are different in several essential respects. In this case a different importation of liquor was involved, and there was absolutely no evidence that the plaintiff with Kessler, or Teitler, or Beecher, or all or any of them, had any scheme, plan, or arrangement to import this liquor unlawfully, or to withdraw it either lawfully or unlawfully, or that they or any of them had anything to do with its withdrawal. There is nothing to show how, when, or by whom the liquor was actually withdrawn. Teitler, to avoid self-incrimination, refused to answer when asked if he had anything to do with the withdrawal. The jury may have been entitled from the evidence to have become suspicious of these men, but no facts were shown which could have justified more than that if the case had gone to the jury. And of course the defendant had the burden of proof of facts and

94

circumstances from which it would follow that the plaintiff had at least a tacit understanding with one or more of the others to do some unlawful act, or some lawful act in an unlawful way.

Judgment affirmed.

L. HAND, Circuit Judge (dissenting). It is quite true that the defendant has not shown that, if it had known Teitler to be the actual buyer, it would not have executed the bond. However, the jury would have been justified in finding that, if it had known that Teitler was in fact engaged in unlawful liquor traffic, and was using a false name to hide that fact, it would not have entered into the transaction. That would have increased the risk, since it is apparent that such a person, who could not presumably get a permit lawfully to withdraw the liquor, was likely to withdraw it unlawfully, and in doing so to evade the duties, just as Teitler did, or at least as a jury might find that he did and meant to do.

Therefore, if the plaintiff knew that Teitler was concealing his name, and was in fact engaged in unlawful liquor traffic, it did not disclose to the defendant facts which materially increased the risk. This, as I understand the law, avoids the bond; the obligee is under a positive duty to disclose such facts, known to him, unknown to the surety. Smith v. Bank of Scotland, 1 Dow, 272; Railton v. Mathew, 10 Cl. & F. 934; Copper Process Co. v. Chic. B. & I. Co., 262 F. 66, 8 A. L. R. 1477 (C. C. A. 3); Franklin Bank v. Cooper, 39 Me. 542; Bank of Monroe v. Anderson Bros. Min. & Ry. Co., 65 Iowa, 692, 22 N. W. 929; Booth v. Storrs, 75 Ill. 438; Pidcock v. Bishop, 3 Barn. & C. 605. There was certainly evidence to support a verdict that the plaintiff did know that Teitler was misrepresenting his name to the defendant. Perhaps that alone was enough, but, all things considered, I believe it went further, and allowed the jury to say that the plaintiff knew that Teitler proposed to dispose of the liquor unlawfully.

Whether the evidence also implicated the plaintiff as an active participator in the evasion of the duties is another matter. The evidence as to that seems to me scarcely weaker than the prosecution's case on which Friedberg was convicted, Becher v. U. S. (C. C. A.) 5 F.(2d) 45; but it is not necessary to go into that question.

The amendment to the answer was enough to let in the proof.